UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Lane McDonough

# 16 CV 4272

_____

_____

_____

*(In the space above enter the full name(s) of the plaintiff(s).)*

-against-

The Department of the City School District of New York, Paul DiDio

_____

**COMPLAINT
FOR EMPLOYMENT
DISCRIMINATION**

Jury Trial: ☒ Yes ☐ No

*(check one)*

*(In the space above enter the full name(s) of the defendant(s).
If you cannot fit the names of all of the defendants in the space
provided, please write "see attached" in the space above and
attach an additional sheet of paper with the full list of names.
Typically, the company or organization named in your charge
to the Equal Employment Opportunity Commission should be
named as a defendant. Addresses should not be included here.)*

This action is brought for discrimination in employment pursuant to: *(check only those that apply)*

☒    Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (race, color, gender, religion, national origin).
*NOTE: In order to bring suit in federal district court under Title VII, you must first obtain a Notice of Right to Sue Letter from the Equal Employment Opportunity Commission.*

☐    Age Discrimination in Employment Act of 1967, as codified, 29 U.S.C. §§ 621 - 634.
*NOTE: In order to bring suit in federal district court under the Age Discrimination in Employment Act, you must first file a charge with the Equal Employment Opportunity Commission.*

☐    Americans with Disabilities Act of 1990, as codified, 42 U.S.C. §§ 12112 - 12117.
*NOTE: In order to bring suit in federal district court under the Americans with Disabilities Act, you must first obtain a Notice of Right to Sue Letter from the Equal Employment Opportunity Commission.*

☒    New York State Human Rights Law, N.Y. Exec. Law §§ 290 to 297 (age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic chacteristics, marital status).

☒    New York City Human Rights Law, N.Y. City Admin. Code §§ 8-101 to 131 (actual or perceived age, race, creed, color, national origin, gender, disability, marital status, partnership status, sexual orientation, alienage, citizenship status).

*Rev. 05/2010*

## I.      Parties in this complaint:

A.      List your name, address and telephone number.  Do the same for any additional plaintiffs named. Attach additional sheets of paper as necessary.

Plaintiff       Name      Lane McDonough
                Street Address   29-50 167th Street
                County, City   County of Queens, Flushing
                State & Zip Code   New York, 11358
                Telephone Number   718-445-4921

B.      List all defendants' names and the address where each defendant may be served.  Make sure that the defendant(s) listed below are identical to those contained in the above caption.  Attach additional sheets of paper as necessary.

Defendant      Name      the Department of Education of the City School District of New York, Paul Ɗ,Ɗ,ₑ , D
                Street Address   100 Church Street, #4
                County, City   County of New York, New York
                State & Zip Code   New York, 10007
                Telephone Number   212-445-4921

C.      The address at which I sought employment or was employed by the defendant(s) is:

                Employer   P.S. 159
                Street Address   205-01 33rd Ave
                County, City   County fo Queens, Queens
                State & Zip Code   New York 11361
                Telephone Number   718-423-8553

## II.     Statement of Claim:

State as briefly as possible the <u>facts</u> of your case, including relevant dates and events.  Describe how you were discriminated against.  If you are pursuing claims under other federal or state statutes, you should include facts to support those claims.  You may wish to include further details such as the names of other persons involved in the events giving rise to your claims.  Do not cite any cases.  If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph.  Attach additional sheets of paper as necessary.

A.  The discriminatory conduct of which I complain in this action includes: *(check only those that apply)*

| | |
|---|---|
| _____ | Failure to hire me. |
| ✗ | Termination of my employment. |
| _____ | Failure to promote me. |
| _____ | Failure to accommodate my disability. |
| ✗ | Unequal terms and conditions of my employment. |

*Rev. 05/2010*                                   2

_____        Retaliation.

_____        Other acts *(specify):* _____.

**Note:** *Only those grounds raised in the charge filed with the Equal Employment Opportunity Commission can be considered by the federal district court under the federal employment discrimination statutes.*

B.   It is my best recollection that the alleged discriminatory acts occurred on: _7/2/2014 - 7/1/2015_.
                                                                                        *Date(s)*

C.   I believe that defendant(s) *(check one):*

_____        is still committing these acts against me.

✗        is not still committing these acts against me.

D.   Defendant(s) discriminated against me based on my *(check only those that apply and explain):*

☐   race _____          ☐   color _____

☒   gender/sex _____          ☐   religion_____

☐   national origin _____

☐   age.   My date of birth is _____ *(Give your date of birth only if you are asserting a claim of age discrimination.)*

☐   disability or perceived disability, _____ *(specify)*

E.   The facts of my case are as follow *(attach additional sheets as necessary):*

_See attached._

_____

_____

_____

_____

_____

_____

_____

**Note:** *As additional support for the facts of your claim, you may attach to this complaint a copy of your charge filed with the Equal Employment Opportunity Commission, the New York State Division of Human Rights or the New York City Commission on Human Rights.*

## III.   **Exhaustion of Federal Administrative Remedies:**

A.   It is my best recollection that I filed a charge with the Equal Employment Opportunity Commission or my Equal Employment Opportunity counselor regarding defendant's alleged discriminatory conduct on: _10/28/2015_____ *(Date).*

*Rev. 05/2010*                                    3

B.      The Equal Employment Opportunity Commission *(check one)*:

_____     has not issued a Notice of Right to Sue letter.

___✗___     issued a Notice of Right to Sue letter, which I received on __3/11/2016_____ *(Date)*.

> *Note: Attach a copy of the Notice of Right to Sue letter from the Equal Employment Opportunity Commission to this complaint.*

C.      Only litigants alleging age discrimination must answer this Question.

Since filing my charge of age discrimination with the Equal Employment Opportunity Commission regarding defendant's alleged discriminatory conduct *(check one)*:

_____     60 days or more have elapsed.

_____     less than 60 days have elapsed.

## IV.   Relief:

**WHEREFORE**, plaintiff prays that the Court grant such relief as may be appropriate, including injunctive orders, damages, and costs, as follows: ____Reinstatement, compensatory damages, economic damages, punitive damag____

_____

_____

*(Describe relief sought, including amount of damages, if any, and the basis for such relief.)*

**I declare under penalty of perjury that the foregoing is true and correct.**

Signed this _8_ day of _June_____, 20_16_.

Signature of Plaintiff _____

Address     _29-50 167ᵗʰ Street_
_Flushing, New York 11358_

Telephone Number _718-445-4921_

Fax Number *(if you have one)* _____

EEOC Form 161 (11.00)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### DISMISSAL AND NOTICE OF RIGHTS

| To: | Lane McDonough<br>29-50 167th Street<br>Flushing, NY 11358 | From: | New York District Office<br>33 Whitehall Street<br>5th Floor<br>New York, NY 10004 |
|---|---|---|---|

| ☐ | *On behalf of person(s) aggrieved whose identity is*<br>*CONFIDENTIAL (29 CFR §1601.7(a))* |
|---|---|

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 520-2015-03738 | Roxanne Zygmund,<br>Investigator | (212) 336-3764 |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

☐ The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐ Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐ Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☐ The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

☐ The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☒ Other *(briefly state)*   **Charging Party is in State Court**

## - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit must be filed <u>WITHIN 90 DAYS</u> of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred <u>more than 2 years (3 years)</u> before you file suit may not be collectible.

On behalf of the Commission

*Kevin J. Berry*

Kevin J. Berry,
District Director

MAR 0 8 2016

*(Date Mailed)*

Enclosures(s)

cc:  Rachael Teitel, Esq.
NYC Department of Education
Office of Legal Services
52 Chambers St., Rm 308
New York, NY 10007

Maria L. Chickedantz, Esq.
Eisner & Associates, P.C.
113 University Place, Eighth Floor
New York, NY 10003-4527

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | |

| New York State Division Of Human Rights | and EEOC |
|---|---|
| *State or local Agency, if any* | |

| Name *(indicate Mr., Ms., Mrs.)* | Home Phone *(Incl. Area Code)* | Date of Birth |
|---|---|---|
| **Mr. Lane McDonough** | **718-445-4921** | **10/20/1988** |

| Street Address | City, State and ZIP Code |
|---|---|
| **29-50 167th Street** | **Flushing, NY  11358** |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others.  *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| **NYC Department of Education** | **135,000 (full time)** | **718-935-4000** |

| Street Address | City, State and ZIP Code |
|---|---|
| **65 Court Street** | **Brooklyn, NY 11201** |

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| **PS 159** | **45** | **718-423-8553** |

| Street Address | City, State and ZIP Code |
|---|---|
| **205-01 33rd Avenue** | **Queens, NY  11361** |

DISCRIMINATION BASED ON *(Check appropriate box(es).)*

☐ RACE  ☐ COLOR  ☒ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN
☐ RETALIATION  ☐ AGE  ☐ DISABILITY  ☐ GENETIC INFORMATION
☒ OTHER *(Specify):* **Sexual Orientation**

DATE(S) DISCRIMINATION TOOK PLACE
Earliest: **June 2, 2014**   Latest: **June 26, 2015**

☐ CONTINUING ACTION

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

**See attached Affidavit.**

JACQUELINE MORRISON
NOTARY PUBLIC-STATE OF NEW YORK
No. 01MO6313596
Qualified In Queens County
My Commission Expires 10/20/18

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

NOTARY – *When necessary for State and Local Agency Requirements*

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.
SIGNATURE OF COMPLAINANT

I declare under penalty of perjury that the above is true and correct.

09/24/2015

Date   Charging Party Signature

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* September 24, 2015

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | |

| New York State Division Of Human Rights | and EEOC |
|---|---|
| *State or local Agency, if any* | |

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

**See attached Affidavit.**

JACQUELINE MORRISON
NOTARY PUBLIC-STATE OF NEW YORK
No. 01MO6313596
Qualified in Queens County
My Commission Expires 10/20/18

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. |
| | SIGNATURE OF COMPLAINANT |
| 09/24/2015 _____ | |
| Date       Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>*(month, day, year)* September 24, 2015 |

CP Enclosure with EEOC Form 5 (11/09)

PRIVACY ACT STATEMENT:  Under the Privacy Act of 1974, Pub. Law 93-579, authority to request personal data and its uses are:

1.   FORM NUMBER/TITLE/DATE.  EEOC Form 5, Charge of Discrimination (11/09).

2.   AUTHORITY.  42 U.S.C. 2000e-5(b), 29 U.S.C. 211, 29 U.S.C. 626, 42 U.S.C. 12117, 42 U.S.C. 2000ff-6.

3.   PRINCIPAL PURPOSES.  The purposes of a charge, taken on this form or otherwise reduced to writing (whether later recorded on this form or not) are, as applicable under the EEOC anti-discrimination statutes (EEOC statutes), to preserve private suit rights under the EEOC statutes, to invoke the EEOC's jurisdiction and, where dual-filing or referral arrangements exist, to begin state or local proceedings.

4.   ROUTINE USES.  This form is used to provide facts that may establish the existence of matters covered by the EEOC statutes (and as applicable, other federal, state or local laws).  Information given will be used by staff to guide its mediation and investigation efforts and, as applicable, to determine, conciliate and litigate claims of unlawful discrimination.  This form may be presented to or disclosed to other federal, state or local agencies as appropriate or necessary in carrying out EEOC's functions.  A copy of this charge will ordinarily be sent to the respondent organization against which the charge is made.

5.   WHETHER DISCLOSURE IS MANDATORY; EFFECT OF NOT GIVING INFORMATION.  Charges must be reduced to writing and should identify the charging and responding parties and the actions or policies complained of.  Without a written charge, EEOC will ordinarily not act on the complaint.  Charges under Title VII, the ADA or GINA must be sworn to or affirmed (either by using this form or by presenting a notarized statement or unsworn declaration under penalty of perjury); charges under the ADEA should ordinarily be signed.  Charges may be clarified or amplified later by amendment.  It is not mandatory that this form be used to make a charge.

### NOTICE OF RIGHT TO REQUEST SUBSTANTIAL WEIGHT REVIEW

Charges filed at a state or local Fair Employment Practices Agency (FEPA) that dual-files charges with EEOC will ordinarily be handled first by the FEPA.  Some charges filed at EEOC may also be first handled by a FEPA under worksharing agreements.  You will be told which agency will handle your charge.  When the FEPA is the first to handle the charge, it will notify you of its final resolution of the matter.  Then, if you wish EEOC to give Substantial Weight Review to the FEPA's final findings, you must ask us in writing to do so within 15 days of your receipt of its findings.  Otherwise, we will ordinarily adopt the FEPA's finding and close our file on the charge.

### NOTICE OF NON-RETALIATION REQUIREMENTS

Please **notify** EEOC or the state or local agency where you filed your charge **if retaliation is taken against you or others** who oppose discrimination or cooperate in any investigation or lawsuit concerning this charge.  Under Section 704(a) of Title VII, Section 4(d) of the ADEA, Section 503(a) of the ADA and Section 207(f) of GINA, it is unlawful for an *employer* to discriminate against present or former employees or job applicants, for an *employment agency* to discriminate against anyone, or for a *union* to discriminate against its members or membership applicants, because they have opposed any practice made unlawful by the statutes, or because they have made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the laws. The Equal Pay Act has similar provisions and Section 503(b) of the ADA prohibits coercion, intimidation, threats or interference with anyone for exercising or enjoying, or aiding or encouraging others in their exercise or enjoyment of, rights under the Act.

## THE EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

LANE MCDONOUGH,

       Charging party,

  -against-

NEW YORK CITY DEPARTMENT OF EDUCATION,

       Respondent.


STATE OF NEW YORK    )

                    )ss:

COUNTY OF QUEENS     )


Lane McDonough, having first been duly sworn, deposes and says:

1. I am the charging party in this EEOC charge and reside at 29-50 167th Street, Flushing, NY, 11358

2. The basis for this EEOC charge includes details about a campaign of harassment retaliation by the DOE against me as a direct result of my gender and sexual orientation which culminated in my termination from my teaching position as a direct consequence of my gender and sexual orientation.

<u>Background</u>

3. In November, 2013, the principal of my school, Mr. Paul DiDio ("the Principal"), observed my substitute teaching on several occasions, and provided me with very positive feedback.

4. In January, 2014, the Principal told me that he wanted to hire me, but that there were no available positions at his school.   The principal therefore asked me if I wanted a recommendation for another position.   I said yes, and because of his recommendation, I got a job at another school.

5. In March 2014, the Principal wrote me a glowing recommendation letter.

6. I believe that I received the positive feedback and glowing recommendation from the Principal because at the time, he believed I was gay.

<u>Principal's Assumption of my Sexual Orientation</u>

7. On June 2, 2014, the Principal interviewed me for a position at P.S. 159.   During the interview, he informed me that he was "hesitant to hire men" because he thought that it was "weird" for men to teach children below second grade.   He added that he was also hesitant to hire male teachers because he had a negative experience with a male teacher at the previous school where he served as principal, and informed me that the male teacher at issue had accused the Principal of "soliciting a blow job" when the Principal gave him a negative review.   The Principal watched me carefully and waited for my reaction, but I was so uncomfortable that I did not respond in any way.

8. <u>During that interview,</u> I was offered a full-time probationary teaching position, which I accepted.   I was the only male teacher hired out of a probationary cohort of six (6) teachers.   Furthermore, at the time I was hired, there was only one (1) male tenured teacher out of 35 teachers.

9. I believe that I was hired by the Principal because at the time, he believed I was gay. He even told me the inappropriate story about the other male teacher to test me, and due to my reaction, I believe he further assumed I was gay.

<u>Principal Discovers my Sexual Orientation</u>

10. On August 1, 2014, the Principal requested a meeting with me to discuss a Human Resources investigation about an Unsatisfactory ["U"] rating I had received at another school as a substitute by my former principal, Mr. Wright. I met with the Principal and explained the situation, which had to do with an email sent by myself to a female staff member of my former school. At the time, the Principal seemed satisfied with my explanation.

11. On August 11, 2014, the Principal informed me that he spoke with Mr. Wright and wanted to discuss the U rating situation again. He told me that he wanted to read the email I sent to the female staff member. He also asked me whether I had a romantic relationship with the female staff member, or if I had ever asked her out.

12. On August 12, 2014, after conducting an investigation into my past U rating, the Principal cleared me for approval.

13. I believe that after the Principal read the email that formed the basis of my U rating at the other school, he stopped assuming that I was gay.

<u>Campaign of Harassment as a Result of Discovery of Sexual Orientation</u>

14. On August 28, 2014, the Principal changed my bulletin board without first complaining to me or otherwise asking me to change it. This is not something the Principal typically does to other teachers.

3

15. On September 22, 2014, the Principal mocked my signature to Ms. Catalano, the Assistant Principal, in front of me. I felt belittled and humiliated by this.

16. In October, 2014, I was assigned to a class of second graders that contained all of the students none of the teachers wanted—in other words, all of the "trouble-makers". As a result, I had a difficult time with classroom management.

17. On October 28, 2014, I had my first classroom observation. During the observation, the Principal reprimanded me for boxes that were in my classroom that belonged to another teacher who had used my classroom previously. Also, when I demonstrated to the Principal how I was able to get the students quiet, by having them mimic me holding one finger to my lips with one hand and raising my other hand in the air, holding two fingers up (and a tactic that most of the other teachers and cafeteria school aides use), the Principal told me to stop doing it, as it was a form of "corporal punishment".

18. On November 24, 2014, I had my second classroom observation. During the observation, the Principal came and left at the beginning of the class, and told me I was getting better. He did not see the students working independently.

19. On December 17, 2014, the Principal gave me an observation report for the 11/24/2015 classroom observation. This report contained an entire paragraph of events that never took place, purportedly during the students' independent work time. When I informed the Principal that what he described never happened and he never witnessed the students working independently, he reluctantly changed the report.

20. On December, 22 2014, the tenured male teacher (the only other male teacher at the school) told me that he met the Principal at a job fair, and was hired to teach at the

Principal's former school, P.S. 127.   The tenured male teacher informed me that the Principal assumed he was also gay, asking constantly "Are you gay? Are you sure you're not gay?"

21. In January, 2015, the Principal began sending a person to my class on a regular basis, and informed me her role was not to observe me, but to offer me support with classroom management.   However, rather than support me in any way, she observed my class and reported back to the Principal. This caused me severe stress.

22. On March 20, 2015, as a result of seeing me engaged in a friendly conversation with Rachel Marques, a female school aide, the Principal approached the female teacher and said "If any of my male teachers ever bother you, you can come to me".   Afterward, Rachel Marques told me "I knew he meant you because you are one of the only two male teachers here, and the other one is married." I felt very uncomfortable and embarrassed by the Principal's inappropriate comments to Rachel Marques.

23. On March 24, 2015, I was in the Principal's Office for a post-observation meeting with the Principal and Ms. Catalano, and the Principal said "I don't think men should teach below second grade.  If I were a parent and dropped off my pre-k child, and the teacher was a guy, I would feel weird about it."

24. In March, 2015, one of the other probationary teachers, Ms. Erin Gallagher, informed me that she received a written disciplinary letter in her personnel file due to a student's parent's complaint.  She was not discontinued and is still teaching 4th grade at P.S. 159. In contrast, throughout the entire period I was employed at P.S. 159, I never received any form of disciplinary action, including a single parent complaint, yet I was discontinued.

In fact, I received two letters of commendation from two different parents in June, 2015, which proves that I was singled out for reasons not related to my performance as a teacher.

25. In April, 2015, flowers arrived for Rachel Marques from her boyfriend, and, in front of the entire office staff, the Principal grabbed the box, looked at the label and shouted "To Rachel From Lane" and everyone laughed. I was humiliated by this comment.

26. On April 22, 2015—Administrative Assistant Day—I brought cookies and a thank you card for the administrative staff, and the Principal called me on my classroom phone and said to me "the only good thing I can say about you is that you're generous."

27. On April 24, 2015, the Principal called me into his office over the loudspeaker. When I arrived, he slammed a post-it note pad on the desk in front of me and told me sarcastically to "take notes" for the Principal Practice Observation ("PPO") that would occur on April 27, 2015.

28. On April 27, 2015, I had a PPO meeting, which went very well, and the Principal acknowledged same.

29. In May, 2015, the Principal and Assistant Principal, Ms. Catalano, walked into my room as I was photographing student work. The Principal sarcastically exclaimed "What are you doing? Taking pictures for your next job?" Again, I felt humiliated by this unprofessional and inappropriate comment.

30. On May 11, 2015, as the Principal permitted the other teachers to count their PPO as their sixth observation, I requested the same treatment. The Principal told me that he would not permit me to use my PPO as my sixth observation.

31. On May 19, 2015, during a school-wide event, the Principal observed one of my students' mobile projects, which was tangled, and announced loudly in front of the entire staff, "Why don't you take it home for your mommy to fix, Lane?" and everyone laughed. Again, I felt humiliated by this unprofessional and inappropriate comment.

32. On May 20, 2015, the Principal informed me I would be discontinued.

33. On May 27, 2015, the Principal entered my classroom with my mentor Ms. Myers to address the list of schools to which I planned to apply, informing me that if I did not transfer to another school, I would be discontinued and would have a "black mark" against me, and would not be able to work in District 26 for the rest of my career.

34. On June 1, 2015, I received the official notice of my discontinuance.

35. In June 2015, the Principal sent several staff members to ask me whether I intended to appeal my discontinuance, where I intended to apply and what I planned to write in my appeal letter, and then they reported the information back to him.

36. On June 4, 2015, during a staff meeting, the Principal handed out the list for next year's staff and read the list aloud. I was the only person at the meeting whose name was not read, and I therefore felt very humiliated. Immediately following the meeting, another teacher told me that he has never read the staff names out loud in such a manner before. After the meeting, my Grade leader informed me that she was never consulted about my discontinuance, and had only good things to report about me and my performance as a teacher.

37. On June 12, 2015, a parent informed me that she had sent a letter of commendation on my behalf to the Principal. I was never told about the letter, so I later requested a copy.

38. On June 15, 2015, the Principal announced all of the next year's staff names over the loud speaker, requesting them to come to his office for their annual rating scores. He did not call my name, nor did he give me my annual rating score. I was the only teacher whose name was not announced over the loud speaker.

39. On June 17, 2015, the Principal threatened to have my state teaching license revoked, at a meeting in the presence of my UFT representative, Mrs. Janice Testagrosse. He also threatened to include the substitute U-rating 2013 email in his reason for discontinuing me in an email to the superintendent. He also told me he did not have to give me my annual rating score until the last day of school, although every other teacher had received theirs.

40. At the end of June, 2015, at a staff meeting, the Principal read the next year's staff names aloud, again.

41. In June, 2015, when news of my discontinuance was known throughout the school, I received call from a teacher at P.S. 127, the Principal's former school, who informed me that she had heard about my discontinuance from a mutual acquaintance. She informed me that she used to work with the Principal at P.S. 127, and that he had an affair with a subordinate teacher. Things ended badly and the teacher with whom he was having an affair sent an email to the entire staff.

42. On August 31, 2015, I applied for unemployment services with the Department of Labor ("DOL"). On September 16th, as I was not receiving all of my payments, I contacted the DOL. The DOL informed me that they received information from my former employer that I had voluntarily left my job, and therefore, I would have to wait 4-6 weeks for my

case to be reviewed. I promptly responded and included an attachment of my discontinuance letter from the Superintendent.

43. On September 19, 2015, I contacted the DOE's Human Resources Office ("HR") in order to ascertain why the DOL had been informed that my termination was voluntary, and was told that I would have to contact my school's HR office. When I contacted my school's HR office, I was told that my discontinuance letter should be sufficient for unemployment services, but was not provided with any explanation as to why I was denied such services. As of the date of this Affidavit, this issue has not been resolved.

Sworn to before me this

_24_ day of September, 2015

_____
Notary Public

_____
Lane McDonough

JACQUELINE MORRISON
NOTARY PUBLIC-STATE OF NEW YORK
No. 01MO6313596
Qualified in Queens County
My Commission Expires _10/20/18_

9