EXHIBIT "B"

EEOC FORM 131 (11/09)

# U.S. Equal Employment Opportunity Commission

| | |
|---|---|
| **Robin Singer**<br>**Associate Counsel**<br>**NYC DEPARTMENT OF EDUCATION**<br>**52 Chambers Street, Room 308**<br>**New York, NY 10007** | **PERSON FILING CHARGE**<br><br>**Lane McDonough**<br>THIS PERSON (check one or both)<br>[X] Claims To Be Aggrieved<br>[ ] Is Filing on Behalf of Other(s)<br><br>EEOC CHARGE NO.<br>**520-2015-03738** |

## NOTICE OF CHARGE OF DISCRIMINATION
*(See the enclosed for additional information)*

This is notice that a charge of employment discrimination has been filed against your organization under:

[X] Title VII of the Civil Rights Act (Title VII)    [ ] The Equal Pay Act (EPA)    [ ] The Americans with Disabilities Act (ADA)

[ ] The Age Discrimination In Employment Act (ADEA)    [ ] The Genetic Information Nondiscrimination Act (GINA)

The boxes checked below apply to our handling of this charge:

1. [ ] No action is required by you at this time.
2. [ ] Please call the EEOC Representative listed below concerning the further handling of this charge.
3. [ ] Please provide by          a statement of your position on the issues covered by this charge, with copies of any supporting documentation to the EEOC Representative listed below. Your response will be placed in the file and considered as we investigate the charge. A prompt response to this request will make it easier to conclude our investigation.
4. [ ] Please respond fully by          to the enclosed request for information and send your response to the EEOC Representative listed below. Your response will be placed in the file and considered as we investigate the charge. A prompt response to this request will make it easier to conclude our investigation.
5. [X] EEOC has a Mediation program that gives parties an opportunity to resolve the issues of a charge without extensive investigation or expenditure of resources. If you would like to participate, please say so on the enclosed form and respond by          **04-DEC-15**
   to   **ADR, Unit, at (212) 336-3646**
   If you DO NOT wish to try Mediation, you must respond to any request(s) made above by the date(s) specified there.

For further inquiry on this matter, please use the charge number shown above. Your position statement, your response to our request for information, or any inquiry you may have should be directed to:

Christopher Kwok,
ADR Coordinator
*EEOC Representative*

Telephone   **(212) 336-3647**

**New York District Office**
**33 Whitehall Street**
**5th Floor**
**New York, NY 10004**
Fax: (212) 336-3625

Enclosure(s): [X] Copy of Charge

CIRCUMSTANCES OF ALLEGED DISCRIMINATION

[ ] Race   [ ] Color   [X] Sex   [ ] Religion   [ ] National Origin   [ ] Age   [ ] Disability   [X] Retaliation   [ ] Genetic Information   [ ] Other

**See enclosed copy of charge of discrimination.** This charge is currently assigned to the EEOC's ADR Unit. No position statement is required at this time. Please complete the attached Invitation to Mediate and submit it to us by the date indicated above. If this charge does not mediate, you will then be given a deadline to provide a position statement and will be expected to provide that position statement by the deadline given.
Also Enclosed: Information on Charges of Discrimination; Document Retention Notice & Invitation to Mediate.

| Date | Name / Title of Authorized Official | Signature |
|---|---|---|
| November 12, 2015 | Kevin J. Berry,<br>District Director | *[signed]* Kevin J. Berry |

Statement and other information before completing this form.   [X] EEOC

## New York State Division Of Human Rights

State or local Agency, if any

and EEOC

| | |
|---|---|
| Name (Indicate Mr., Ms., Mrs.)<br>**Mr. Lane McDonough** | Home Phone (Incl. Area Code)<br>**718-445-4921** |
| Street Address<br>**29-50 167th Street** | Date of Birth<br>**10/20/1988** |
| City, State and ZIP Code<br>**Flushing, NY 11358** | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name<br>**NYC Department of Education** | No. Employees, Members<br>**135,000 (full time)** | Phone No. (Include Area Code)<br>**718-935-4000** |
|---|---|---|
| Street Address<br>**65 Court Street** | City, State and ZIP Code<br>**Brooklyn, NY 11201** | |

| Name<br>**PS 159** | No. Employees, Members<br>**45** | Phone No. (Include Area Code)<br>**718-423-8553** |
|---|---|---|
| Street Address<br>**205-01 33rd Avenue** | City, State and ZIP Code<br>**Queens, NY 11361** | |

DISCRIMINATION BASED ON (Check appropriate box(es).)

[ ] RACE   [ ] COLOR   [X] SEX   [ ] RELIGION   [ ] NATIONAL ORIGIN
[ ] RETALIATION   [ ] AGE   [ ] DISABILITY   [ ] GENETIC INFORMATION
[X] OTHER (Specify): Sexual Orientation

DATE(S) DISCRIMINATION TOOK PLACE
Earliest: **June 2, 2014**   Latest: **June 26, 2015**

[ ] CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):
**See attached Affidavit.**

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
NEW YORK DISTRICT OFFICE
SEP 29 2015
DATE RECEIVED

JACQUELINE MORRISON
NOTARY PUBLIC-STATE OF NEW YORK
No. 01MO6313596
Qualified in Queens County
My Commission Expires 10/20/18

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

NOTARY – When necessary for State and Local Agency Requirements

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.
SIGNATURE OF COMPLAINANT

I declare under penalty of perjury that the above is true and correct.

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) September 24, 2015

**09/24/2015**
Date   Charging Party Signature

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other Information before completing this form. | ☐ FEPA<br>☒ EEOC | |

**New York State Division Of Human Rights** and EEOC
*State or local Agency, if any*

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

**See attached Affidavit.**

JACQUELINE MORRISON
NOTARY PUBLIC-STATE OF NEW YORK
No. 01MO6313596
Qualified In Queens County
My Commission Expires 10/20/18

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| 09/24/2015<br>Date        Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>(month/day, year) September 24, 2015 |

# THE EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

LANE MCDONOUGH,

    Charging party,

-against-

NEW YORK CITY DEPARTMENT OF EDUCATION,

    Respondent.

STATE OF NEW YORK    )
                          )ss:
COUNTY OF QUEENS    )

Lane McDonough, having first been duly sworn, deposes and says:

1. I am the charging party in this EEOC charge and reside at 29-50 167th Street, Flushing, NY, 11358

2. The basis for this EEOC charge includes details about a campaign of harassment retaliation by the DOE against me as a direct result of my gender and sexual orientation which culminated in my termination from my teaching position as a direct consequence of my gender and sexual orientation.

## Background

3. In November, 2013, the principal of my school, Mr. Paul DiDio ("the Principal"), observed my substitute teaching on several occasions, and provided me with very positive feedback.

1

9. I believe that I was hired by the Principal because at the time, he believed I was gay. He even told me the inappropriate story about the other male teacher to test me, and due to my reaction, I believe he further assumed I was gay.

## Principal Discovers my Sexual Orientation

10. On August 1, 2014, the Principal requested a meeting with me to discuss a Human Resources investigation about an Unsatisfactory ["U"] rating I had received at another school as a substitute by my former principal, Mr. Wright. I met with the Principal and explained the situation, which had to do with an email sent by myself to a female staff member of my former school. At the time, the Principal seemed satisfied with my explanation.

11. On August 11, 2014, the Principal informed me that he spoke with Mr. Wright and wanted to discuss the U rating situation again. He told me that he wanted to read the email I sent to the female staff member. He also asked me whether I had a romantic relationship with the female staff member, or if I had ever asked her out.

12. On August 12, 2014, after conducting an investigation into my past U rating, the Principal cleared me for approval.

13. I believe that after the Principal read the email that formed the basis of my U rating at the other school, he stopped assuming that I was gay.

## Campaign of Harassment as a Result of Discovery of Sexual Orientation

14. On August 28, 2014, the Principal changed my bulletin board without first complaining to me or otherwise asking me to change it. This is not something the Principal typically does to other teachers.

3

15. On September 22, 2014, the Principal mocked my signature to Ms. Catalano, the Assistant Principal, in front of me. I felt belittled and humiliated by this.

16. In October, 2014, I was assigned to a class of second graders that contained all of the students none of the teachers wanted—in other words, all of the "trouble-makers". As a result, I had a difficult time with classroom management.

17. On October 28, 2014, I had my first classroom observation. During the observation, the Principal reprimanded me for boxes that were in my classroom that belonged to another teacher who had used my classroom previously. Also, when I demonstrated to the Principal how I was able to get the students quiet, by having them mimic me holding one finger to my lips with one hand and raising my other hand in the air, holding two fingers up (and a tactic that most of the other teachers and cafeteria school aides use), the Principal told me to stop doing it, as it was a form of "corporal punishment".

18. On November 24, 2014, I had my second classroom observation. During the observation, the Principal came and left at the beginning of the class, and told me I was getting better. He did not see the students working independently.

19. On December 17, 2014, the Principal gave me an observation report for the 11/24/2015 classroom observation. This report contained an entire paragraph of events that never took place, purportedly during the students' independent work time. When I informed the Principal that what he described never happened and he never witnessed the students working independently, he reluctantly changed the report.

20. On December, 22 2014, the tenured male teacher (the only other male teacher at the school) told me that he met the Principal at a job fair, and was hired to teach at the

Principal's former school, P.S. 127. The tenured male teacher informed me that the Principal assumed he was also gay, asking constantly "Are you gay? Are you sure you're not gay?"

21. In January, 2015, the Principal began sending a person to my class on a regular basis, and informed me her role was not to observe me, but to offer me support with classroom management. However, rather than support me in any way, she observed my class and reported back to the Principal. This caused me severe stress.

22. On March 20, 2015, as a result of seeing me engaged in a friendly conversation with Rachel Marques, a female school aide, the Principal approached the female teacher and said "If any of my male teachers ever bother you, you can come to me". Afterward, Rachel Marques told me "I knew he meant you because you are one of the only two male teachers here, and the other one is married." I felt very uncomfortable and embarrassed by the Principal's inappropriate comments to Rachel Marques.

23. On March 24, 2015, I was in the Principal's Office for a post-observation meeting with the Principal and Ms. Catalano, and the Principal said "I don't think men should teach below second grade. If I were a parent and dropped off my pre-k child, and the teacher was a guy, I would feel weird about it."

24. In March, 2015, one of the other probationary teachers, Ms. Erin Gallagher, informed me that she received a written disciplinary letter in her personnel file due to a student's parent's complaint. She was not discontinued and is still teaching 4th grade at P.S. 159. In contrast, throughout the entire period I was employed at P.S. 159, I never received any form of disciplinary action, including a single parent complaint, yet I was discontinued.

In fact, I received two letters of commendation from two different parents in June, 2015, which proves that I was singled out for reasons not related to my performance as a teacher.

25. In April, 2015, flowers arrived for Rachel Marques from her boyfriend, and, in front of the entire office staff, the Principal grabbed the box, looked at the label and shouted "To Rachel From Lane" and everyone laughed. I was humiliated by this comment.

26. On April 22, 2015—Administrative Assistant Day—I brought cookies and a thank you card for the administrative staff, and the Principal called me on my classroom phone and said to me "the only good thing I can say about you is that you're generous."

27. On April 24, 2015, the Principal called me into his office over the loudspeaker. When I arrived, he slammed a post-it note pad on the desk in front of me and told me sarcastically to "take notes" for the Principal Practice Observation ("PPO") that would occur on April 27, 2015.

28. On April 27, 2015, I had a PPO meeting, which went very well, and the Principal acknowledged same.

29. In May, 2015, the Principal and Assistant Principal, Ms. Catalano, walked into my room as I was photographing student work. The Principal sarcastically exclaimed "What are you doing? Taking pictures for your next job?" Again, I felt humiliated by this unprofessional and inappropriate comment.

30. On May 11, 2015, as the Principal permitted the other teachers to count their PPO as their sixth observation, I requested the same treatment. The Principal told me that he would not permit me to use my PPO as my sixth observation.

6

31. On May 19, 2015, during a school-wide event, the Principal observed one of my students' mobile projects, which was tangled, and announced loudly in front of the entire staff, "Why don't you take it home for your mommy to fix, Lane?" and everyone laughed. Again, I felt humiliated by this unprofessional and inappropriate comment.

32. On May 20, 2015, the Principal informed me I would be discontinued.

33. On May 27, 2015, the Principal entered my classroom with my mentor Ms. Myers to address the list of schools to which I planned to apply, informing me that if I did not transfer to another school, I would be discontinued and would have a "black mark" against me, and would not be able to work in District 26 for the rest of my career.

34. On June 1, 2015, I received the official notice of my discontinuance.

35. In June 2015, the Principal sent several staff members to ask me whether I intended to appeal my discontinuance, where I intended to apply and what I planned to write in my appeal letter, and then they reported the information back to him.

36. On June 4, 2015, during a staff meeting, the Principal handed out the list for next year's staff and read the list aloud. I was the only person at the meeting whose name was not read, and I therefore felt very humiliated. Immediately following the meeting, another teacher told me that he has never read the staff names out loud in such a manner before. After the meeting, my Grade leader informed me that she was never consulted about my discontinuance, and had only good things to report about me and my performance as a teacher.

37. On June 12, 2015, a parent informed me that she had sent a letter of commendation on my behalf to the Principal. I was never told about the letter, so I later requested a copy.

7

38. On June 15, 2015, the Principal announced all of the next year's staff names over the loud speaker, requesting them to come to his office for their annual rating scores. He did not call my name, nor did he give me my annual rating score. I was the only teacher whose name was not announced over the loud speaker.

39. On June 17, 2015, the Principal threatened to have my state teaching license revoked, at a meeting in the presence of my UFT representative, Mrs. Janice Testagrosse. He also threatened to include the substitute U-rating 2013 email in his reason for discontinuing me in an email to the superintendent. He also told me he did not have to give me my annual rating score until the last day of school, although every other teacher had received theirs.

40. At the end of June, 2015, at a staff meeting, the Principal read the next year's staff names aloud, again.

41. In June, 2015, when news of my discontinuance was known throughout the school, I received call from a teacher at P.S. 127, the Principal's former school, who informed me that she had heard about my discontinuance from a mutual acquaintance. She informed me that she used to work with the Principal at P.S. 127, and that he had an affair with a subordinate teacher. Things ended badly and the teacher with whom he was having an affair sent an email to the entire staff.

42. On August 31, 2015, I applied for unemployment services with the Department of Labor ("DOL"). On September 16th, as I was not receiving all of my payments, I contacted the DOL. The DOL informed me that they received information from my former employer that I had voluntarily left my job, and therefore, I would have to wait 4-6 weeks for my

8

case to be reviewed. I promptly responded and included an attachment of my discontinuance letter from the Superintendent.

43. On September 19, 2015, I contacted the DOE's Human Resources Office ("HR") in order to ascertain why the DOL had been informed that my termination was voluntary, and was told that I would have to contact my school's HR office. When I contacted my school's HR office, I was told that my discontinuance letter should be sufficient for unemployment services, but was not provided with any explanation as to why I was denied such services. As of the date of this Affidavit, this issue has not been resolved.

Sworn to before me this

24 day of September, 2015

_____
Notary Public

_____
Lane McDonough

JACQUELINE MORRISON
NOTARY PUBLIC-STATE OF NEW YORK
No. 01MO6313596
Qualified in Queens County
My Commission Expires 10/20/18

9



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**New York District Office**

33 Whitehall Street, 5th Floor
New York, NY 10004-2112

## MEDIATION INVITATION RESPONSE FORM

**Return this completed form before the mediation response date
on the enclosed Notice of Charge of Discrimination.**

Your charge has been selected for EEOC's Mediation Program. The Commission is making available this effective, neutral and confidential process to Charging Parties and Respondents as an efficient alternative to investigation and possible litigation of employment disputes. If either side prefers investigation to mediation, please let us know immediately, so that we may return your charge back to investigation. If both parties agree to mediation, we will attempt to schedule an agreeable date. Please be advised that this process takes approximately 3-4 weeks.

**While the charge is assigned to the Mediation Unit, the due date for the Position Statement is suspended. If either party chooses not to take advantage of the mediation process, the charge will be reassigned to the Enforcement Division and Respondent will be notified in writing of a Position Statement deadline. Please be advised that we expect to receive the Position Statement on or before the Position Statement Deadline.**

**CHARGE NUMBER:** _____

**PARTY NAMES:** _____

Please return this form to:     *ADR Unit - Mediation*
                                *New York District Office*
                                *Equal Employment Opportunity Commission*
                                *33 Whitehall Street, 5th Floor*
                                *New York, NY 10004-2112*

Or fax your invitation to:      *Fax: (212) 336-3625*

( )   **I/ We agree to mediation:**

        Provide 3 proposed dates (within 21 calendar days): _____

( )   **I/ We decline to participate in the mediation program:**

        If you decline to participate in the mediation program, please state the reason for declining.
        This information will be used for evaluative purposes only.

Comments: _____

Indicate:  [ ] Charging Party / Representative     [ ] Respondent / Representative   \   (Please print clearly)

Charge Number/ Party Names: _____

Name _____ Title: _____

Street Address: _____

City, State & Zip: _____

Telephone: _____ Fax: _____

E-mail: _____

## Document Retention Notice Pursuant to Charge Of Discrimination

YOU ARE HEREBY GIVEN NOTICE NOT TO DESTROY, CONCEAL OR ALTER ANY PAPER DOCUMENTS OR ELECTRONIC DATA INCLUDING DATA GENERATED BY OR STORED ON ANY COMPUTER OR COMPUTER STORAGE MEDIA (E.G., HARD DISKS, FLOPPY DISKS, BACKUP TAPES), THAT RELATE TO THE CLAIMS AND DEFENSES IN THE ACCOMPANYING CHARGE OF DISCRIMINATION. FAILURE TO COMPLY WITH THIS NOTICE, EITHER THROUGH INTENTIONAL ACTS OR NEGLIGENCE, CAN RESULT IN SANCTIONS FOR SPOLIATION OF EVIDENCE. SANCTIONS COULD INCLUDE MONETARY PENALTIES AND OTHER COURT-IMPOSED ACTION.

A. **Paper Documents to be Preserved**: Hard-copy information which should be preserved includes, but is not limited to:

1. Personnel files;
2. Employee data;
3. Payroll information;
4. Personnel policies, procedures, and regulations;
5. Letters, memoranda and notes;
6. All complaints of discrimination or unfair treatment;
7. All documents related to internal investigations; and
8. All other documents containing information relevant to the subject matter of the charge of discrimination.

Note that even where hard-copy documents exist, the Commission may still seek the same information in an electronic format simultaneously.

B. **Electronic Data to be Preserved**: Electronic information which should be preserved includes but is not limited to:

1. Electronic mail (e-mail) and information about e-mail (including message contents, header information and logs of e-mail system usage) sent or received which is relevant to the subject matter of the charge of discrimination;
2. Databases (including all records and fields and structural information in such databases), containing any reference to or information about the human resources or personnel information of your employees;
3. Word processing files, including prior drafts, "deleted" files and file fragments, containing information about or relevant to the subject matter of the charge of discrimination;
4. Electronic data files and file fragments created or used by electronic spreadsheet programs, where such data files contain information relevant to the subject matter of the charge of discrimination; and
5. All other electronic data containing information relevant to the subject matter of the charge of discrimination.