UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
LANE MCDONOUGH,

                Plaintiff,                        16-cv-4272 (LTS)(JLC)

     v.

THE NEW YORK CITY DEPARTMENT OF
EDUCATION, PAUL DIDIO

                Defendants.
------------------------------------------------------------------x

## MEMORANDUM OF LAW IN OPPOSITION OF MOTION TO DISMISS

MIRER MAZZOCCHI SCHALET JULIEN & CHICKEDANTZ, PLLC
*Attorneys for Plaintiff*

150 Broadway, 12th Floor
New York, NY 10038
Tel: (212) 231-2235
Fax: (212) 409-8338
*maria@mmsjlaw.com*

By: Maria L. Chickedantz

# TABLE OF CONTENTS

TABLE OF AUTHORITIES............................................................................…...... i

PRELIMINARY STATEMENT.......................................................................1

STATEMENT OF OPERATIVE FACTS............................................... …..3

    A.  Adverse actions taken against plaintiff...............................................................3

    B.  Defendants' perception of plaintiff as homosexual due to his effeminate qualities..........4

    C.  Direct evidence of discrimination through the use of epithets and sexually charged language base on plaintiff's effeminate qualities.................................................…..……4

    D.  Direct evidence of discrimination through DiDio's blatant admissions that plaintiff's gender was the main factor in his employment decisions.………..................................…..5

    E.  Strong comparator evidence that gives rise to the inference of discrimination..............5

    F.  Indirect evidence that gives rise to the inference of discrimination..........................6

    G.  Statistical evidence that gives rise to a strong inference of discrimination..................6

    H.  Further documentary evidence that defendants' reason for terminating plaintiff is a pretext.............................................................................................6

STANDARD OF REVIEW.................................................................7

ARGUMENT.....................................................................................10

**I.**    PLAINTIFF'S TITLE VII CLAIMS ARE SUFFICIENT TO DEFEAT A MOTION TO DISMISS.............................................................................10

    A.  Plaintiff's Gender Stereotyping Theory is Recognized as Sex Discrimination under Title VII.......................................................................10

    B.  Plaintiff Has Pleaded Facts In Support of His Claim For Gender Discrimination That Are Plausible, Not Conclusory, Nor Threadbare, Not Are They Stray Remarks.................................................................................12

        i.      Defendants' Adverse Actions against Plaintiff.......................12

        ii.     Plaintiff's Gender Was a Motivating Factor for the Adverse Actions...........................................................................12

iii.     DiDio's Hiring Of Plaintiff Does Not Amount To A Same Actor Problem…………………………………………………………....15

iv.     That DiDio is Also Male Does Not Render Plaintiff's Claim Implausible…………………………………………………………15

v.     Plaintiff's Allegations That Similarly Situated Women Teachers Received Favorable Treatment Establishes a Gender-Based Disparate Treatment Claim……………………………………………16

C. Plaintiff Has Pleaded Facts Establishing A Retaliation Claim Under Title VII…17

II.     PLAINTIFF'S CLAIMS ARE NOT BARRED BY RES JUDICATA OR COLLATERAL ESTOPPEL…………………………………………..……………..........19

A. Plaintiff's Claims are Not Barred by the Doctrine of Res Judicata……………...20

B. Plaintiff's Claims are not Barred by the Doctrine of Collateral Estoppel……….21

i.     The Issue in Questions was Not Actually or Necessarily Decided in Plaintiff's Prior Article 78 Proceeding……………………....……..22

ii.     Plaintiff's Article 78 Proceeding Would Have Denied Him a Full and Fair Opportunity to Litigate his Discrimination Claims…………………………………………………………….…...25

III.     PLAINTIFF COMPLIED WITH THE NOTICE OF CLAIM PREREQUISITE FOR HIS STATE AND CITY CLAIMS…………………………………………..…………26

CONCLUSION……………………………………………………………..………28

# TABLE OF AUTHORITIES

**CASES**

*Alexander v. Bd. of Educ.,*
648 Fed. Appx. 118 (2d Cir. 2016)..................................................................8

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009)...........................................................................6, 7, 8

*Bagley v. Yale Univ.,*
2015 U.S. Dist. LEXIS 166759 (D. Conn. 2015) ........................................17

*Barrett v. Forest Labs., Inc.*
39 F.Supp.3d 407 (S.D.N.Y. 2014) ...............................................................7

*Beechwood Restorative Care Center v. Leeds,*
436 F.3d 147 (2d Cir. 2006) .........................................................................22

*Beharry v. M.T.A. N.Y. City Transit Auth.,*
1999 U.S. Dist. LEXIS 3157 ........................................................................24

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007)........................................................................................6

*Biro v. Conde Nast,*
807 F.3d 541 (2d Cir. 2015) ...........................................................................7

*Brown v. Daikin Am. Inc.*
756 F.3d 219 (2d Cir. 2014) ...........................................................................7

*Carlton v. Mystic Transp., Inc.,*
202 F.3d 129, 136 (2d Cir. 2000) .................................................................14

*Chambers v. Time Warner, Inc.,*
282 F.3d 147 (2d Cir. 2002) ...........................................................................9

*Christiansen v. Omnicom Grp., Inc.,*
2017 U.S. App. LEXIS 5278(2d Cir., March 27, 2017)........................1, 10,11

*Daniel v. T&M Protection Resources, LLC,*
Index No. 15-560-cv (2d Cir., April 25, 2017)............................................10

*Danzer v. Norden Systems,*

151 F.3d 50 (2d Cir. 1998) ....................................................................................2,13,15

*DiFolco v. MSNBC Cable L.L.C.,*
  622 F.3d 104(2d Cir. 2010) ..................................................................................9

*Donlon v. Bd. of Educ.,*
  2007 U.S. Dist. LEXIS 2724 (W.D.N.Y. 2007) .......................................................26

*EEOC v. Port Auth. of N.Y. & N.J.,*
  768 F.3d 247 (2d Cir. 2014) .................................................................................7

*Field v. Tonawanda City Sch. Dist.,*
  604 F.Supp.2d 544 (W.D.N.Y. 2008).......................................................................26

*Gelish v. Dix Hills Water Dist.,*
  58 A.D. 3d 841, 842, (N.Y. 2009)...................................................................…..27

*Grady v. Affiliated Cent.,*
  130 F.3d 553 (2d Cir. N.Y. 1997)......................................................................14,15

*Henry v. Wyeth Pharms., Inc.,*
  616 F.3d 134 ....................................................................................................18

*Imperato v. Otsego Cnty. Sheriff's Dep't,*
  2016 U.S. Dist. LEXIS 50155 ...............................................................................17

*James v. Countrywide Fin. Corp.,*
  849 F.Supp.2d 296 (E.D.N.Y. 2012). .....................................................................17

*Jaquez v. N.Y. City Health & Hosps. Corp.,*
  2016 U.S. Dist. LEXIS 3897 (S.D.N.Y. 2016)...........................................................17

*Kaye v. Storm King Sch.,*
  2015 U.S. Dist. LEXIS 127508   (S.D.N.Y. June 8, 2015) ........................................13

*Kremer v. Chemical Constr. Corp.,*
  477 F.Supp. 587 (S.D.N.Y. 1979) .........................................................................21

*Kushner v. Valenti,*
  285 F.Supp.2d 314 (E.D.N.Y. 2003) ......................................................................26

*Latino Officers Ass'n v. City of New York,*
  253 F.Supp.2d 771 (S.D.N.Y 2003) ...........................................................21, 22, 23, 24

*Littlejohn v. City of New York,*
  795 F.3d 297,302 (2d Cir. 2015) .......................................................................3, 7,8

*Mancuso v. Vill of Pelham,*
  2016 U.S. Dist. LEXIS 134788 (S.D.N.Y., September 29, 2016)................................................22

*Marden v. Dinin,*
  22 F.Supp.2d 180 (S.D.N.Y. 1998) ........................................................................................24

*Matter of Ramirez v. City of New York,*
  2017 N.Y. App. Div. Lexis 17909 (2nd Dep't, March 15, 2017)........................................26

*McDonnell Douglas Corp. v. Green,*
  411 U.S. 792 (1973).............................................................................................................3,8

*McGuinness v. Lincoln Hall,*
  263 F.3d 49 (2d Cir. 2001) ....................................................................................................17

*McKithen v. Brown,*
  481 F.3d 89 (2d Cir. 2007) ....................................................................................................22

*Memnon v. Clifford Chance US, LLP,*
  667 F. Supp. 2d 334 (S.D.N.Y. 2009) ...................................................................................19

*N.J. Carpenters Health Fund v. Royal Bank of Scotland Grp., PLC,*
  709 F.3d 109 (2d Cir. 2013). .................................................................................................8

*Oncale v. Sundower Offshore Servs., Inc.,*
  523 U.S. 75 (1998)..............................................................................................................2,15

*Osby v. City of N.Y.,*
  No. 14-3556 (2d Cir. 2016) ...................................................................................................9

*Pilitz v. Inc. Vill. Of Rockville Ctr.,*
  2008 U.S. Dist. LEXIS 72231 (E.D.N.Y. 2008) ..................................................................21

*Price Waterhouse v. Hopkins,*
  490 U.S. 228 (1989)................................................................................1,10, 11, 13, 14, 15

*Sotomayor v. City of New York,*
  862 F.Supp.2d 226 (E.D.N.Y. 2012). ...................................................................................12

*Staten v. City of New York,*
  2016 U.S. App. LEXIS 12014 (2d Cir. 2016) .......................................................................7

*Sumner v. United States Parcel Service,*
  899 F.2d 203 (2d Cir. 1990). .................................................................................................18

*Swierkiewicz v. Sorema N.A.,*
534 U.S. 506 (2002) ...............................................................................................................7, 17

*Vega v. Hempstead Union Free Sch. Dist.,*
801 F.3d 72 (2d Cir. 2015) ...............................................................................1,6, 7,8, 9,14, 17

**Other Authorities**

42 U.S.C. 2000(e) ...................................................................................................................8

Fed. R. Civ. P. 12(b)(6) .........................................................................................................8

Article 78 Petition ......................................................................................................19, 20

Education Law §3813 ............................................................................................................26

## PRELIMINARY STATEMENT

Defendants move to dismiss plaintiff's First Amended Complaint ("FAC") in its entirety. In so doing, defendants misstate the Second Circuit's plausibility standard as applied on Motions to Dismiss in employment discrimination cases.[1] Tellingly, defendants spend over eight pages spinning their version of the facts before citing any legal standards, which even as misstated would render defendants' version of the facts an improper request to weigh the evidence when deciding a Motion to Dismiss. Moreover, they ask the Court to accept their defenses as true and as dispositive of plaintiff's claims, which the Court is not permitted to do when deciding either a Motion to Dismiss or a Motion for Summary Judgment.

Defendants misconstrue plaintiff's legal theory by arguing that plaintiff's Title VII gender discrimination claim fails because the Second Circuit does not recognize sexual orientation as a protected class. But plaintiffs First Amended Complaint is clear that his claim is based on the gender stereotyping theory of sex discrimination articulated by the Supreme Court of the United States and its Second Circuit progeny.[2] Defendants also incorrectly imply that because plaintiff's state and city claims are for sexual orientation discrimination, they cast doubt upon the theory of gender discrimination underlying his federal claim—a proposition that the Second Circuit has explicitly rejected, stating "When evaluating such a complaint, courts should not rely on the mere fact that a complaint alleges sexual orientation discrimination to find that a plaintiff fails to state a separate claim for gender stereotyping discrimination, but should instead independently evaluate the allegations of gender stereotyping." *Christiansen v. Omnicom Grp., Inc.*, 2017 U.S. App. LEXIS 5278, n.2 (2d Cir., March 27, 2017).

---

[1] *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72 (2d Cir. 2015).
[2] *Price Waterhouse v. Hopkins,* 490 U.S. 228 (1989); and *Christiansen v. Omnicom Grp., Inc.*, 2017 U.S. App. LEXIS 5278 (2d Cir., March 27, 2017).

Defendants also argue that plaintiff's Title VII pleadings are insufficient by mischaracterizing defendant DiDio's derogatory epithets to plaintiff's effeminate qualities as "stray remarks." However, defendants' derogatory comments are only one of six forms of evidence of bias that plaintiff pleads to establish that his gender was an illegal motivating factor in the adverse actions taken against him, including his ultimate termination. He does so by (i) indirect evidence of defendant DiDio's similar history towards other male teachers prior to plaintiff's hire, (ii) statistical evidence related to the ratio of women to men in plaintiff's cohort of teachers hired during the same period, (iii) statistical evidence related to the ratio of women to men who worked at plaintiff's school during the relevant period, (iv) different and far more favorable terms and conditions of employment for plaintiff's similarly situated women teachers compared to plaintiff. Plaintiff also presents direct evidence of the role that a teacher's gender plays in defendant DiDio's employment decisions in the form of, (v) defendant Didio's explicit statements, made more than once, about his belief that men should not teach small children, and DiDio's statement that this belief was the basis for plaintiff's termination, (vi) derogatory epithets and sexually charged language directed to plaintiff motivated by plaintiff's effeminate qualities.

Equally unavailing is defendants' argument that plaintiff's claim fails by virtue of the fact that defendant Didio is also male—a theory that has long been rejected by the Supreme Court of the United States and the Second Circuit.[3] Defendants also argue that any doubt about whether defendant DiDio's hostility against plaintiff was actually motivated by his gender bias should be resolved in defendants' favor as a mere "personality difference" and dispose of plaintiff's claims, in direct contravention of the standard on Motion to Dismiss.

---

[3] *Oncale v. Sundower Offshore Servs., Inc.*, 523 U.S. 75 (1998); *Danzer v. Norden Systems*, 151 F.3d 50 (2d Cir. 1998).

Finally, defendants argue that plaintiff's pleadings do not survive *Iqbal.* In addition to the Second Circuit having announced its *minimal* pleading standard in *Littlejohn v. City of New York*, 795 F.3d 297 (2d Cir. 2015), the existence of comparators who were treated differently and more favorably than plaintiff in the terms and conditions of their employment presents the classic *McDonnell Douglas* comparator pleading giving rise to an inference of discrimination under any standard. Standing alone, this one fact is dispositive of defendants' Motion to Dismiss.

## STATEMENT OF OPERATIVE FACTS

Plaintiff respectfully refers the Court to his First Amended Complaint for all relevant and pertinent facts. Of significance to the present Motion to Dismiss are the following operative facts:

**A. Adverse actions taken against plaintiff:**

- Between October 28, 2014 and May 18, 2015, defendants' gave plaintiff six (6) negative evaluations which were unlawfully motivated by plaintiff's gender, and which formed the DOE's rationale for terminating plaintiff. (FAC ¶¶ 43, 45-7, 51, 78).

- On May 29, 2015, plaintiff was issued a counseling memo—a disciplinary letter—for conduct that his similarly situated women colleagues were free to engage in without receiving similar letters. (FAC ¶ 74, 76-7). This counseling memo was also used as a basis for plaintiff's termination. (FAC ¶ 78).

- On June 1, 2015, DiDio advised plaintiff that he had recommended to the community superintendent that plaintiff be terminated on the basis of the pretextual evaluations and counseling memo. (FAC ¶ 78). Accordingly, on July 1, 2015, plaintiff was terminated. (FAC ¶ 88).

- Defendants' engaged in a campaign of harassment against plaintiff that was motivated by his gender and his failure to conform to gender stereotypes by: the use of derogatory epithets and sexually explicit language directed at plaintiff based on his gender (FAC ¶¶ 27, 58, 62-3); abruptly changing plaintiff's teaching assignment (FAC ¶ 41); directing other teachers to transfer problematic students out of their classes in order to assign them to plaintiff's—a first year teacher—class (FAC ¶ 42); requiring intense monitoring of only plaintiff, including asking others to "spy" on plaintiff and report back to defendants, while not placing similar monitoring requirements on other teachers (FAC ¶ 53-58); defendant's

warning at least one woman staff member that plaintiff may attempt to harass her (FAC ¶ 59); publicly mocking plaintiff simply for speaking to a woman staff member (FAC ¶ 60); dispatching supervisors to perform spontaneous and unannounced "pop-in" visits in order to evaluate plaintiff's performance while not performing such visits on other teachers (FAC ¶¶ 73-4); imposing discipline on plaintiff for conduct while allowing others to engage in the same conduct with no discipline (FAC ¶¶ 76-8).

**B. Defendants' perception of plaintiff as homosexual due to his effeminate qualities:**

- Plaintiff is widely considered to have "effeminate qualities" and as a result, people frequently ask him if he is homosexual. (FAC ¶ 23).

- On June 2, 2014, defendant Paul DiDio, principal of P.S. 159, hired plaintiff for a teaching position at his school. At the time plaintiff was hired, DiDio assumed plaintiff was homosexual due to his effeminate qualities, which was a motivating factor in DiDio's decision to hire plaintiff. (FAC ¶¶ 27-8, 32).

- On August 11, 2014, DiDio received information that led him to believe that plaintiff was not homosexual and questioned plaintiff about his personal romantic life. (FAC ¶¶ 34-5). This discovery led to a year of harassment and adverse actions against plaintiff motivated by plaintiff's effeminate qualities.

**C. Direct evidence of discrimination through the use of epithets and sexually charged language based on plaintiff's effeminate qualities:**

- On June 2, 2014, DiDio said to plaintiff, "I gave a male teacher a bad review, and he retaliated by accusing me of soliciting a blow job." (FAC ¶ 27).

- At a March 18, 2015 staff breakfast, DiDio shouted "Hey everyone! Lane baked brownies! Guess I'm going to have to start a Home Ec. Class for him now!" (FAC ¶ 58).

- At a May 1, 2015 meeting, at the encouragement of DiDio, a staff member shouted, "Hey Lane, why don't you give DiDio a lap dance as a gift for his tenure? He would love that!" (FAC ¶ 63).

- At a May 19, 2015 school-wide event, DiDio shouted "Why don't you take it home for your mommy to fix, Lane?" when one of plaintiff's mobile projects became entangled. (FAC ¶ 62).

**D. Direct evidence of discrimination through DiDio's blatant admissions that plaintiff's gender was the main factor in his employment decisions:**

- On June 2, 2014, when DiDio stated, "I am hesitant to hire men because I had a bad experience once. I gave a male teacher a bad review and he retaliated by

accusing me of soliciting a blow job... I would like to put you in the second grade, but I don't think men should teach below the second grade." (FAC ¶ 27).

- On March 24, 2015, when DiDio stated, "I don't think men should teach below second grade. If I were a parent and dropped off my pre-k child, and the teacher was a guy, I would feel weird about it... that's why I don't know where to place you next year Lane. I'm considering assigning you as an Art teacher." (FAC ¶ 48).

### E. Strong comparator evidence that gives rise to the inference of discrimination:

- plaintiff's similarly situated women colleagues included the five (5) women teachers hired at the same time as plaintiff who were in the same probationary cohort as plaintiff (i.e., non-tenured first year teachers)(hereinafter, the "comparators"). (FAC ¶ 29).

- The comparators were permitted to count their Principal Practice Observation (an evaluation that includes positive performance ratings) as one of their official pedagogical evaluations, while plaintiff was not permitted to do so and was instead required to use more onerous classroom observations consisting of negative ratings for all of his pedagogical evaluations. (FAC ¶ 50).

- Defendants abided by school policy in rating the comparators' pedagogy based on two Math, two Reading and two Writing classroom observations, which allowed them the opportunity to improve their annual pedagogical rating, while deviating from that policy for plaintiff's observations by conducting half of his observations in the more difficult subject of Writing. (FAC ¶ 52).

- Defendants required extra monitoring of plaintiff's performance by dispatching two mentors to monitor him and report back to defendant DiDio, while not requiring extra monitoring of the comparators. (FAC ¶ 53-57).

- None of the comparators were subject to harassment (as described above), unlike plaintiff. (FAC ¶¶ 41-2, 67).

- None of the comparators were disciplined for conduct that resulted in discipline for plaintiff. (FAC ¶ 67).

- At least one comparator received an adverse performance review due to parent complaints, yet was not recommended for termination, while plaintiff was recommended for termination on the basis of his performance evaluations. (FAC ¶ 68).

- All of the comparators were rehired the following year while plaintiff was not. (FAC ¶ 69).

5

**F. Indirect evidence that gives rise to the inference of discrimination:**

- DiDio has a history of targeting male teachers with effeminate qualities on the assumption that they are homosexual, such as he did with Chris Mosera, the only other male teacher at P.S. 159 who also is considered to have effeminate qualities, and who DiDio harassed by frequently asking him "Are you gay? Are you sure you're not gay?" (FAC ¶ 65).

- By his own admission, DiDio's history includes at least one accusation of sexual harassment (of "soliciting a blow job") by a male teacher, which infers Didio's motivation for hiring effeminate male teachers on the assumption they are homosexual and potentially easy targets for sexual harassment. It also infers DiDio's modus operandi when dealing with unwilling male teachers is to harass them. (FAC ¶ 27).

- DiDio's unlawful motivation for hiring effeminate male teachers is further supported by the fact that on November 24, 2014, DiDio intimidated plaintiff by very inappropriately pressuring him to go into his personal bathroom with him, ostensibly in order to fix plaintiff's collar. (FAC ¶ 44).

**G. Statistical evidence that gives rise to a strong inference of discrimination:**

- For the 2014-2015 school year, plaintiff was the only male teacher hired out of a cohort of six (6) new teachers—all of whom were probationary (untenured). (FAC ¶ 29).

- During the 2014-2015 school year, only two (2) of P.S. 159's thirty-five (35) teachers were male, including plaintiff. The other male teacher was a tenured teacher who also had effeminate qualities.

**H. Further documentary evidence that defendants' reason for terminating plaintiff is a pretext:**

- Although defendants advised plaintiff that the reason he was terminated was because of his evaluation reports which they said demonstrated incompetent performance, on September 8, 2015, plaintiff received his annual performance rating: a high Effective—a rating that is considered to be a sign of very proficient pedagogy. (FAC ¶ 89).

## STANDARD OF REVIEW

"At the initial stage of a litigation, the plaintiff's burden is minimal." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 86 (2d Cir. 2015). To survive a Motion to Dismiss, a

complaint must plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly, 550* U.S. 544, 570 (2007), and "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). Absent "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," *Id.* at 678, the court "accept[s] as true the factual allegations in the complaint and draw[s] all inferences in the plaintiff's favor." *Biro v. Conde Nast,* 807 F.3d 541, 544 (2d Cir. 2015); See also; *Staten v. City of New York,* 2016 U.S. App. LEXIS 12014, *1 (2d Cir. 2016). "While detailed factual allegations are not required, a formulaic recitation of the elements of a cause of action will not do.... even if they are doubtful in fact, and a complaint may not be dismissed based on a judge's disbelief of a complaint's factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity." *Vega,* 801 F.3d at 86.

In *Swierkiewicz,* the Supreme Court held that "an employment discrimination plaintiff need not plead a prima facie case of discrimination," but must only meet the pleading requirements in Federal Rules of Civil Procedure 8(a). *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 512-13 (2002). In light of the pleading standards subsequently articulated in *Iqbal,* the Second Circuit recently clarified that "while a discrimination complaint need not allege facts establishing each element of a prima facie case of discrimination to survive a motion to dismiss, . . . it must at a minimum assert nonconclusory factual matter sufficient to nudge its claims across the line from conceivable to plausible to proceed." *EEOC v. Port Auth. of N.Y. & N.J.,* 768 F.3d 247, 254 (2d Cir. 2014) (internal citations and quotation marks omitted). Further, the Second Circuit has clarified post *Iqbal* that a plaintiff meets his burden to plausibly allege facts if the pleaded facts "provide 'at least minimal support for the proposition that the employer was

motivated by discriminatory intent.' " *Vega* 801 F.3d at 84-85 (quoting *Littlejohn v. City of New York*, 795 F.3d 297, 311 [2d Cir. 2015]). See also *Alexander v. Bd. of Educ.*, 648 Fed. Appx. 118, 119 (2d Cir. 2016) (stating that a Plaintiff needn't plead a prima facie case under *McDonnell Douglas* to survive a motion to dismiss, as "McDonnell Douglas burden-shifting framework is an evidentiary standard, not a pleading requirement, and is therefore not applied at the Fed. R. Civ. P. 12(b)(6) motion-to-dismiss stage.")

In short, "Under *Iqbal* and *Twombly*, in an employment discrimination case, a plaintiff must plausibly allege that (1) the employer took adverse action against him and (2) his race, color, religion, sex, or national origin was a motivating factor in the employment decision" *Vega*, 801 F.3d at 87. That is, the Second Circuit rejected a heightened pleading standard in employment discrimination cases, and deemed in *Littlejohn* that a "minimal burden" was consistent with *Iqbal*, stating, "The facts required by *Ashcroft v. Iqbal* to be alleged in the complaint need not give plausible support to the ultimate question of whether the adverse employment action was attributable to discrimination. They need only give plausible support to a minimal inference of discriminatory motivation." *Littlejohn*, 795 F.3d at 302. Moreover, "the plausibility standard is not akin to a probability requirement." *Id.* "If a fact is susceptible to two or more competing inferences, in evaluating these motions, the Court must, as a matter of law, draw the inference that favors the plaintiff so long as it is reasonable." *N.J. Carpenters Health Fund v. Royal Bank of Scotland Grp., PLC*, 709 F.3d 109, 121 (2d Cir. 2013). "[T]he existence of other, competing inferences does not prevent the plaintiff's desired inference from qualifying as reasonable unless at least one of those competing inferences rises to the level of an obvious alternative explanation." *Id.* (internal quotation marks omitted).

Further, as the court articulated in *Vega*, "in making the plausibility determination, the court is to draw on its judicial experience and common sense. … In making the plausibility determination, the court must be mindful of the elusive nature of intentional discrimination. Clever men may easily conceal their motivations. Because discrimination claims implicate an employer's usually unstated intent and state of mind, rarely is there direct, smoking gun, evidence of discrimination. Instead, plaintiffs usually must rely on bits and pieces of information to support an inference of discrimination, i.e., a mosaic of intentional discrimination." *Vega,* 801 F.3d at 86.

Finally, "[t]he ultimate issue in an employment discrimination case is whether the plaintiff has met her burden of proving that the adverse employment decision was motivated at least in part by an impermissible reason… At the pleadings stage, then, a plaintiff must allege that the employer took adverse action against her at least in part for a discriminatory reason, and she may do so by alleging facts that directly show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference of discrimination." *Vega,* 801 F.3d at 87; See also *Osby v. City of N.Y.*, No. 14-3556 (2d Cir. 2016) (summary order). "In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *Chambers v. Time Warner, Inc.,* 282 F.3d 147, 153 (2d Cir. 2002). *See also DiFolco v. MSNBC Cable L.L.C.,* 622 F.3d 104, 111 (2d Cir. 2010)

Here, all inferences being drawn in favor of the non moving party, plaintiff has clearly met his burden, both by direct and indirect evidence, of presenting well pleaded facts that

plausibly state that "(1) the employer took adverse action against" him and (2) that his gender "was a motivating factor in the employment decision." *Vega*, 801 F.3d at 87.

## ARGUMENT

### POINT I: PLAINTIFF'S TITLE VII CLAIMS ARE SUFFICIENT TO DEFEAT A MOTION TO DISMISS

#### A. Plaintiff's Gender Stereotyping Theory is Recognized as Sex Discrimination under Title VII

As an initial matter, plaintiff's Title VII claim is based on the gender stereotyping theory of sex discrimination articulated by the Supreme Court of the United States in *Price Waterhouse v. Hopkins,* 490 U.S. 228 (1989). In *Price Waterhouse*, the female plaintiff, a senior manager at an accounting firm, was described as "macho" and "masculine" and informed that "to improve her chances for partnership, . . . [she] should walk more femininely, talk more femininely, dress more femininely, wear make-up, have her hair styled, and wear jewelry." 490 U.S. at 231-32, 235 (internal quotation marks omitted). After her employer declined to nominate her for partnership, plaintiff sued under Title VII alleging sex discrimination. *Id.* at 231-33. The Supreme Court held that adverse employment action rooted in "sex stereotyping" or "gender stereotyping" was actionable sex discrimination. *Id.* at 250-52.

Furthermore, in Title VII gender stereotyping cases, the Second Circuit has recently held that a complaint alleging discrimination based on a plaintiff's effeminate qualities sufficiently establishes a gender discrimination claim under Title VII. See *Christiansen v. Omnicom Grp., Inc.*, 2017 U.S. App. LEXIS 5278 (2d Cir., March 27, 2017); See also *Daniel v. T&M Protection Resources, LLC*, Index No. 15-560-cv (2d Cir., April 25, 2017)(summary order). In *Christiansen*, the district court granted defendants' motion to dismiss plaintiff's Title VII claims because the "complaint contained fewer allegations about his effeminacy than about his sexual orientation,

the allegations about his effeminacy did not 'transform a claim for discrimination that Plaintiff plainly interpreted—and the facts support—as stemming from sexual orientation animus into one for sexual stereotyping.'" *Id.* at \*10-11. However, in reversing the District Court's decision, the Second Circuit held that "[t]he gender stereotyping allegations in Christiansen's complaint are cognizable under *Price Waterhouse* and our precedents. Christiansen alleges that he was perceived by his supervisor as effeminate and submissive and that he was harassed for these reasons." Id at \*12. The Second Circuit further noted that "it is not our task at the motion to dismiss stage to weigh the evidence and evaluate the likelihood that Christiansen would prevail on his Title VII gender stereotyping claim. Instead, we assess whether he has 'state[d] a claim to relief that is plausible on its face.' We hold that he has." *Id.* at \*13 (quoting *Iqbal* at 678).

Here, like the plaintiff in *Christiansen*, plaintiff alleges that he suffered adverse actions because defendants' perception of him as effeminate. Specifically related to defendants' perception of plaintiff as having effeminate qualities, plaintiff alleges that:

- Plaintiff has what his friends and family characterize as "effeminate qualities" and, accordingly, plaintiff is frequently asked by others if he is homosexual. (FAC ¶ 23).

- At a staff event, defendant DiDio exclaimed, "Hey everyone! Lane baked brownies! Guess I'm going to have to start a Home Ec. Class for him now!" (FAC ¶ 58).

- At a school event in which one of plaintiff's projects became tangled, defendant DiDio exclaimed, "Why don't you take it home to mommy to fix, Lane?" (FAC ¶ 62).

- Defendant DiDio mocked plaintiff's effeminate signature. (FAC ¶ 40).

- Defendants encouraged plaintiff's colleagues' to join in the harassment, who frequently and publicly mocked plaintiff with comments such as, "Hey Lane, why don't you give [defendant] DiDio a lap dance as a gift for his tenure? He would love that!" (FAC ¶ 63).

- Defendant DiDio's actions towards the other male teacher who is also widely considered to be "effeminate", such as asking him "Are you gay? Are you sure you're not gay?" (FAC ¶¶ 31, 65).

These allegations supports plaintiff's Title VII gender stereotyping claim.

## B. Plaintiff Has Pleaded Facts In Support Of His Claim For Gender Discrimination That Are Plausible, Not Conclusory, Nor Threadbare, Nor Are They Stray Remarks

Plaintiff sufficiently pleads that defendants took three adverse actions against him that were motivated by his gender.

### i. Defendants' Adverse Actions against Plaintiff

Plaintiff alleges that he received six (6) negative evaluation reports between October 28, 2014 and May 18, 2015. (FAC ¶¶ 43, 45-7, 51). He also alleges that he was issued a counseling memo (a disciplinary letter) in May 29, 2015. (FAC ¶ 76). Plaintiff further alleges that on July 1, 2015, he was terminated from his employment, and that the reasons proffered by defendants for his termination were the evaluation reports and the counseling memo. (FAC ¶¶ 78, 88). Each of these adverse acts constitute a discrete act of disparate treatment as they were each unlawfully motivated by plaintiff's gender (and his complaints about discrimination).

To the extent defendants' argue that the evaluation reports or the counseling memo do not constitute adverse actions, the courts in this Circuit would hold otherwise, as the counseling memo and the evaluation reports "trigger[ed] other negative consequences to the terms and conditions of the plaintiff's employment," namely, his termination. *Sotomayor v. City of New York*, 862 F.Supp.2d 226, 254 (E.D.N.Y. 2012). And although plaintiff argues that his termination was retaliation for his participation in protected activity, it was defendants who advised plaintiff that his termination was based on the counseling memo and the evaluation reports. (FAC ¶ 78).

### ii. Plaintiff's Gender Was a Motivating Factor for the Adverse Actions

Plaintiff offers direct evidence of DiDio's anti-male bias: DiDio stated, on more than one occasion, that he did not like to hire men and that he did not believe men should teach young children. (FAC ¶¶ 27, 48). This is direct evidence that a teacher's gender is a motivating factor in decisions by defendants related to the terms and conditions of the teacher's employment. In addition, as discussed *supra*, defendant DiDio's several epithets and sexually charged statements related to plaintiff's effeminate qualities and failure to conform to gender norms are also direct evidence of gender discrimination. See *Kaye v. Storm King Sch.*, 2015 U.S. Dist. LEXIS 127508 *15-16 (S.D.N.Y. June 8, 2015) (denying summary judgment to defendants on gender discrimination claims for hostile work environment and disparate pay where defendant's use of derogatory gender-based terms supported an inference of pretext sufficient to deny defendant's motion). Moreover, on March 24, 2015, defendant DiDio, in front of the Assistant Principal, advised plaintiff that he did not have a place for him come the following year because he did not believe that men should teach small children, stating: "I don't think men should teach below second grade. If I were a parent and dropped off my pre-k child, and the teacher was a guy, I would feel weird about it... that's why I don't know where to place you next year Lane. I'm considering assigning you as an Art teacher." (FAC ¶ 48)(emphasis added). In addition, plaintiff offers a plethora of indirect evidence in the operative facts, *supra,* including that plaintiff was rated Effective in his end of year performance evaluation—a sign of very proficient pedagogy. (FAC ¶ 89). Plaintiff has pleaded facts indicating a discriminatory animus, defendants' own admissions of the true basis for plaintiff's termination, and an abundance of allegations undercutting defendants' rationale for plaintiff's termination, which more than meet his burden of pleading minimal inference of discriminatory motive for the adverse actions taken against him. Further, DiDio's explicit phrases are direct evidence and subject to the *Price Waterhouse*

analysis and defendants have the burden of establishing at trial that they would have made the same decision in the absence of discrimination.

Defendants allege that plaintiff has not met his minimal burden of alleging facts suggesting an inference of sex discrimination by characterizing plaintiff's direct evidence of gender bias by defendant DiDio as stray remarks under *Danzer v. Norden Systems*, 151 F.3d 50, 56 (2d Cir. 1998). However, defendants' authority precisely demonstrates how inapposite to the stray remarks doctrine is on Motion to Dismiss. *Danzer* involved a *motion for summary judgment* [italics added] and concerned whether epithets alone are sufficient to create a triable question of fact for a jury. That is, the stray remarks doctrine presents an evidentiary standard not a pleading standard as it has since it was first articulated in Justice O'Connor's concurrence in *Price Waterhouse v. Hopkins*. Here, defendants impermissibly seek to dispose of powerful direct evidence of discrimination of plaintiff by misapplication of the stray remarks doctrine.

Moreover, even if the stray remarks doctrine were applicable, defendants' arguments fail on the merits. Plaintiff has pleaded that the remarks in question were made by defendant DiDio, who, at all times relevant, was the principal of plaintiff's school and his direct supervisor (FAC ¶ 21). Moreover, defendants wrongly assert that the alleged lack of a causal connection between the remarks and the adverse actions is fatal to plaintiff's gender claim. No one factor in the stray remarks analysis is dispositive. Further there is no allegation that defendant DiDio's animus ceased at any time or that the animus was otherwise removed. Rather plaintiff alleges that the animus continued consistently throughout plaintiff's employment. (FAC ¶¶ 36-89). See *Carlton v. Mystic Transp., Inc.*, 202 F.3d 129, 136 (2d Cir. 2000) ("Although evidence of one stray comment by itself is usually not sufficient proof to show age discrimination, that stray comment

may 'bear a more ominous significance' when considered within the totality of all the evidence").

Plaintiff's sex discrimination claim relies, at the very least, on all the operative facts stated above, and not only on the direct evidence presented. The indirect evidence presented is more than sufficient, whether individually, or taken as a "mosaic" to establish the plausibility of plaintiff's sex discrimination claim: a "mosaic" of intentional discrimination. *Vega*, 801 F.3d at 86.

### iii. DiDio's Hiring Of Plaintiff Does Not Amount To A Same Actor Problem

Defendants assert that because defendant DiDio hired plaintiff, plaintiff's claim is implausible. In support of this position, defendants cite *Grady v. Affiliated Cent.*, 130 F.3d 553, 554 (2d Cir. N.Y. 1997). Here, again, defendants seek improperly to apply an evidentiary standard at the pleadings stage. The same actor problem where applicable, applies at earliest at the Motion for Summary Judgment stage, as did *Grady.*

But even if the same actor defense were applicable to the instant motion, as discussed *supra*, plaintiff alleges that defendant only hired him because he assumed that plaintiff was homosexual on the date he hired plaintiff on June 2, 2014. (FAC ¶¶ 27-32). On August 11, 2014, defendant received information that made him stop believing that plaintiff was homosexual, and therefore, no longer a desirable employee as he no longer considered him to be an easy target for sexual harassment. (FAC ¶¶ 34-35). Defendant's motivation for hiring plaintiff is supported by defendant DiDio's own admission that at least one other male teacher has accused DiDio of sexual harassment in the past. (FAC ¶ 27). It is also supported by the fact that the only other male teacher at the school who is also effeminate was harassed on a number of occasions by DiDio, who frequently asked him questions such as "Are you gay?" (FAC ¶ 27).

Defendants also dispute the date of plaintiff's hire, thereby presenting a factual dispute that is not appropriately raised at this stage in litigation.

#### iv. That DiDio is Also Male Does Not Render Plaintiff's Claim Implausible

Defendants argue that plaintiff's gender discrimination claims are rendered insufficient by the fact that defendant DiDio is male. But as the Second Circuit has held, "[t]he proposition that people in a protected category cannot discriminate against their fellow class members is patently untenable." *Danzer,* 151 F.3d at 55. Moreover, the Supreme Court has made it explicitly clear that same-sex harassment is actionable under Title VII. *Oncale v. Sundower Offshore Servs., Inc.,* 523 U.S. 75 (1998).

#### v. Plaintiff's Allegations That Similarly Situated Women Teachers Received Favorable Treatment Establishes a Gender-Based Disparate Treatment Claim

Plaintiff has pleaded that his similarly situated women colleagues were treated more favorably in their terms and conditions of employment than plaintiff in a variety of ways, including: that the comparators were permitted to use more favorable indicia towards their year-end ratings, while plaintiff was not permitted to do so. (FAC ¶ 50); that defendants abided by unofficial school policy in rating the comparators' pedagogy by conducting equal evaluations of all subjects, while deviating from that policy for plaintiff by evaluating him on the most difficult subject the majority of the time. (FAC ¶ 52); that defendants monitored plaintiff far more than his comparators. (FAC ¶ 53-57); that DiDio did not harass the comparators in the same way he harassed plaintiff. (FAC ¶ 67); that plaintiff was subject to discipline for conduct while the comparators were permitted to engage in the same conduct with no consequences. (FAC ¶ 67); that at least one comparator received an adverse performance review due to parent complaints, yet was not recommended for termination, while plaintiff was recommended for termination on the ostensible basis of his performance evaluations. (FAC ¶ 68); and that all of the comparators

were rehired the following year while plaintiff was not. (FAC ¶ 69).

Plaintiff's allegations that he was treated less favorably in various aspects of his employment than his similarly situated women colleagues give rise to an inference of discrimination, and are sufficient to plead a gender-based disparate treatment claim. See, *Brown v. Daikin Am. Inc.*, 756 F.3d 219 (2d Cir. 2014); See also, *Barrett v. Forest Labs., Inc.*, 39 F.Supp.3d 407, 437 (S.D.N.Y. 2014)("allegations that ten Plaintiffs received lower base pay than similarly-situated male colleagues are sufficient to plead a gender-based disparity").

Defendants argue that plaintiff's Title VII claim fails the *Iqbal* pleadings standard because plaintiff failed to demonstrate that any other similarly situated women teachers were "similarly situated in *all* respects." Although plaintiff argues that the comparators are in fact similar to him in all respects (i.e., they too are first-year untenured teachers), it bears highlighting that on Motion for Summary Judgment, "[a] plaintiff is not obligated to show disparate treatment of an *identically* situated employee... To be a comparator for the purpose of this analysis, the other individual must have a situation sufficiently similar to plaintiff's to support at least a minimal inference that the difference of treatment may be attributable to discrimination." *McGuinness v. Lincoln Hall*, 263 F.3d 49, 54 (2d Cir. 2001)(internal quotations omitted). Again, defendants misconstrue the appropriate standard for Motion to Dismiss, as the question of who is an appropriate comparator is one generally reserved for a jury and the "bar is low." *Bagley v. Yale Univ.*, 2015 U.S. Dist. LEXIS 166759, *5 (D. Conn. 2015). Thus, a plaintiff need not show that he and his comparators were in "identical" situations; rather, he must merely show "a reasonably close resemblance of the facts and circumstances" between his case and his comparators' cases. *Imperato v. Otsego Cnty. Sheriff's Dep't*, 2016 U.S. Dist. LEXIS 50155, *51-52 (N.D.N.Y. 2016). See also, *Jaquez v. N.Y. City Health & Hosps. Corp.*, 2016 U.S. Dist.

LEXIS 3897, *18 (S.D.N.Y. 2016).

## C. Plaintiff Has Pleaded Facts Establishing A Retaliation Claim Under Title VII

"As with discrimination claims, plaintiff is not required to plead facts sufficient to establish a prima facie case of Title VII retaliation in order to survive a Rule 12(b)(6) motion to dismiss." *James v. Countrywide Fin. Corp.*, 849 F.Supp.2d 296, 310 (E.D.N.Y. 2012). "Rather, 'the ordinary rules for assessing the sufficiency of a complaint apply.'" *Id.* (quoting *Swierkiewicz*, at 511). Thus, "for a retaliation claim to survive a motion for judgment on the pleadings... the plaintiff must plausibly allege that: (1) defendants discriminated—or took an adverse employment action—against him, (2) 'because' he has opposed any unlawful employment practice." *Vega*, 801 F.3d at 90 (quoting 42 U.S.C. § 2000-e-3[a]).

Here, plaintiff has pleaded that on May 29, 2015, plaintiff received a counseling memo (a disciplinary letter), which formed the basis (along with the evaluation reports) for defendant DiDio's June 1, 2015 recommendation that plaintiff be terminated from his employment. (FAC ¶¶ 77-8). Plaintiff has further pleaded that defendants took these adverse actions <u>because</u> plaintiff opposed defendants' discriminatory harassment against him by complaining to his union representative about the harassment on April 15, 2015, who in turn disclosed plaintiff's complaint to defendant DiDio. (FAC ¶ 70). Thus, on May 1, 2015, defendant DiDio confronted plaintiff about his complaint, and plaintiff acknowledged that he had made the complaint, further advising defendant DiDio that it was because DiDio had unfairly singled him out for mistreatment throughout the year. (FAC ¶ 71). These complaints are protected activity under Title VII, as "informal protests of discriminatory employment practices" are considered protected activity for the purpose of a Title VII retaliation claim. *Sumner v. United States Parcel Service*, 899 F.2d 203, 209 (2d Cir. 1990). In any event, defendants' argument that plaintiff's

complaints are insufficient to constitute "protected activity" under Title VII raises a factual dispute, and is therefore not an appropriate argument to make in a Motion to Dismiss. See *Henry v. Wyeth Pharmaceuticals, Inc.*, 616 F.3d 134, 148 (2d Cir. 2010) ("A jury may find retaliation even if the agent denies direct knowledge of a plaintiff's protected activities, for example, so long as the jury finds that the circumstances evidence knowledge of the protected activities or the jury concludes that an agent is acting explicitly or implicitly upon the orders of a superior who has the requisite knowledge")(internal quotations omitted).

Moreover, a causal connection between plaintiff's two complaints and his termination is established through the chronology of the events, because defendant DiDio's recommendation that plaintiff be terminated from his employment occurred six weeks after he complained to the union representative, and four weeks after he complained directly to defendant DiDio. *Memnon v. Clifford Chance US, LLP*, 667 F. Supp. 2d 334, 345 (S.D.N.Y. 2009) (*prima facie* retaliation case established where approximately six weeks had elapsed between protected activity and adverse employment action).

Defendants argue that plaintiff's evaluations vitiate the causal connection between the protected activity and the adverse action because defendants began evaluating plaintiff prior to his participation in protected activity. However, and as further discussed *infra*, plaintiff's gender discrimination theory is that the evaluations themselves were adverse actions motivated by his gender, and that the evaluations were ultimately used as the DOE's basis for plaintiff's termination. In addition, the counseling memo was also adverse action, as it was also used by the DOE as a basis for plaintiff's termination. Combined with the fact that plaintiff also alleged that DiDio told him that the reason for his termination was because he did not think men should teach small children, as well as the fact that plaintiff actually received an Effective year-end

performance rating, at the very least, defendants' raise a factual dispute which is not appropriate in the instant Motion to Dismiss.

## POINT II: PLAINTIFF'S CLAIMS ARE NOT BARRED BY RES JUDICATA OR COLLATERAL ESTOPPEL

On September 24, 2015, plaintiff filed a charge for unlawful discrimination and retaliation with the EEOC, (FAC ¶ 8), and on November 1, 2015, plaintiff filed his original Article 78 Petition with the Supreme Court of New York ("Article 78 Court"), requesting judicial review of the decision to terminate him, on the ground that the evaluations did not comply with the Danielson Rubric as required by New York Education Law, and on the ground that his termination was motivated by unlawful gender and sexual orientation discrimination. (See, Piercey Decl., Ex. C). However, on March 8, 2016, the EEOC issued plaintiff a Right-to-Sue letter on the basis that his discrimination claims were being adjudicated in State Court. (See, Piercey Decl., Ex. D). Therefore, in order to ensure that his discrimination claims would be reconsidered by the EEOC, plaintiff removed all of his discrimination claims from his Article 78 Petition, and on April 7, 2016, plaintiff filed an Amended Article 78 Petition seeking judicial review of the DOE's decision to terminate plaintiff only on the basis that there was no rational basis for his termination because the evaluation reports were not completed in accordance with the Danielson Rubric as required by New York Education Law. (See, Piercey Decl., Ex. E). Shortly thereafter, on April 26, 2016, plaintiff wrote the EEOC to advise them that he had filed an Amended Article 78 Petition which no longer contained his discrimination claims, and requested that the EEOC permit him to file a new EEOC charge, attaching a copy of the Amended Article 78 Petition. (Chickedantz Aff., Ex. A). Because plaintiff's Amended Article 78 Petition no longer contained his discrimination claims and no longer posed a risk for inconsistent rulings, the EEOC granted plaintiff's request, and on July 19, 2016, the EEOC advised plaintiff

that his new EEOC charge had been transferred to the ADR Unit. (Chickedantz Aff., Ex. B). On August 10, 2016, the EEOC issued plaintiff with a new Right-to-Sue letter, this time based on a finding of no probable cause. (Chickedantz Aff., Ex. C).

Although plaintiff's Amended Article 78 Petition contained background information related to defendant DiDio's treatment of plaintiff, the only reason that information was included was to provide context. As acknowledged by the EEOC, that background information did not alter or expand the only question that was presented by plaintiff to the Article 78 Court, which was: **"the sole issue before this Court is whether the six (6) observation reports and petitioner's response to the Superintendent's Discontinuance Notice formed a sufficient basis for the Superintendent's decision to terminate petitioner."** (Chickedantz Aff., Ex. D).

The Article 78 Court's decision was therefore limited to the following holding: "The six informal observations do comply with the Danielson Rubric. Therefore, this Court denies the petition as there is nothing that was arbitrary or capricious, made in bad faith, or in violation of statutory law." (Piercey Decl., Ex. F). Accordingly, and as further articulated below, plaintiff's discrimination claims are not barred by res judicata or collateral estoppel.

### A. Plaintiff's Claims are Not Barred by the Doctrine of Res Judicata

It is well-settled in this Circuit that the doctrine of res judicata does not bar plaintiff's claims. "[T]he New York Appellate Division in an Article 78 proceeding is restricted to using a proceeding similar to summary judgment; it has no authority to determine whether summary judgment is, in a given case, preferable to a full judicial trial on the merits. For this reason, the issues presented before the state court in an Article 78 proceeding and those before the federal court under Title VII are necessarily dissimilar, thus making the application of res judicata inappropriate. *Kremer v. Chemical Constr. Corp.*, 477 F.Supp. 587, 592 (S.D.N.Y.

1979); see also *Latino Officers Ass'n v. City of New York*, 253 F.Supp.2d 771 (S.D.N.Y 2003)(noting, "One of the leading cases establishing the proper application of Section 1738 in the civil rights context is *Kremer v. Chemical Construction Corp.*"). Accordingly, plaintiff's claims are not barred by res judicata, as he is entitled to a full trial on the merits in order to prosecute his discrimination claims, and is entitled to discovery to support his claims.

In addition, "an Article 78 proceeding does not bar a subsequent action pursuant to Section 1983 [] because the full measure of relief sought by the civil rights plaintiff is not available in the context of an Article 78 proceeding." *Pilitz v. Inc. Vill. Of Rockville Ctr.*, 2008 U.S. Dist. LEXIS 72231 (E.D.N.Y. 2008). Here, the doctrine of res judicata does not bar plaintiff's claims because in plaintiff's Article 78 proceeding against the DOE, plaintiff (a probationary teacher) was only entitled to seek reinstatement, whereas in his Title VII matter, plaintiff seeks both economic and non-economic damages.

**B. Plaintiff's Claims are Not Barred by the Doctrine of Collateral Estoppel**

Similarly, collateral estoppel does not bar plaintiff's claims. "[C]ollateral estoppel will preclude a court from deciding an issue where '(1) the issue in question was actually and necessarily decided in a prior proceeding, and (2) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the first proceeding.'" *Mancuso v. Vill of Pelham*, 2016 U.S. Dist. LEXIS 134788, at *51 (S.D.N.Y., September 29, 2016) (citing *McKithen v. Brown*, 481 F.3d 89, 105 (2d Cir. 2007). Further, an issue that is "'necessarily decided' must have been both 'actually decided' . . . and necessary to support a valid and final judgment on the merits." *Id.* (citing *Beechwood Restorative Care Center v. Leeds,* 436 F.3d 147, 153 (2d Cir. 2006). Moreover, "[t]he party asserting issue preclusion bears the burden of showing that the identical issue was previously decided, while the party against

whom the doctrine is asserted bears the burden of showing the absence of a full and fair opportunity to litigate in the prior proceeding." *Id.*

### i. The Issue in Question was Not Actually or Necessarily Decided in Plaintiff's Prior Article 78 Proceeding.

The issue before the Article 78 Court was whether the evaluations that the DOE presented as the basis for plaintiff's termination violated the Danielson Rubric, while the issue in plaintiff's Title VII case is whether the adverse actions against plaintiff, including his termination, were motivated by his gender or retaliation. Nothing related to defendants' discriminatory or retaliatory motivation for terminating plaintiff was decided by the Article 78 Court.

Defendants argue that plaintiff's claims are barred by collateral estoppels, and rely on *Latino Officers Ass'n v. City of New York*, 253 F.Supp.2d 771 (S.D.N.Y 2003)—a Summary Judgment decision that actually supports plaintiff's argument that his claims are <u>not</u> barred by collateral estoppel. In *Latino Officers Ass'n*, one of the plaintiffs (plaintiff Malave) had previously filed an Article 78 petition challenging his termination which was dismissed on the basis that his termination was supported by substantial evidence and did not "shock the conscience." Plaintiff Malave subsequently filed a Title VII race discrimination case for unlawful termination. This Court determined that plaintiff Malave's Title VII claims were not barred by the doctrine of collateral estoppel because:

> A finding [by the Article 78 Court] that the decision to terminate was supported by substantial evidence--essentially a finding that it was rational-- does not lead inexorably to the conclusion that race was not a motivating factor in the NYPD's decision to terminate him. Similarly, the court's determination that the penalty of termination did not "shock the conscience" essentially means that there was some rational basis for the termination, but does not preclude the possibility that race was a factor in determining the penalty. It is possible that race motivated defendants' decisions to terminate

Malave, even though defendants had another articulated basis for the termination that the Article 78 court found to be rational.

*Id.* at 785. For this reason, the Court in *Latino Officers Ass'n* determined that "Malave neither raised nor did the Article 78 court decide, whether his termination was discriminatory or retaliatory. Thus, Malave may move forward with all of his wrongful termination claims, except that he is precluded from relitigating the factual issues that were determined against him" *Id.* at 787.

Similarly, here, the Article 78 Court dismissed plaintiff's Article 78 Petition because the performance evaluations presented by the DOE as the basis for plaintiff's termination did not violate the Danielson Rubric, and therefore constituted sufficient evidence to support plaintiff's termination. But the issue of whether plaintiff's termination was discriminatory or retaliatory was never raised or decided, and a finding by this Court that plaintiff's termination was motivated by gender would not contradict the Article 78 Court's decision that defendant's termination of plaintiff was supported by sufficient evidence. Therefore, plaintiff is not barred from bringing the instant action for discrimination and retaliation.

Moreover, for the reasons articulated in *Latino Officers Ass'n*, defendants' reliance on *Beharry v. M.T.A. N.Y. City Transit Auth.*, 1999 U.S. Dist. LEXIS 3157 and *Marden v. Dinin*, 22 F.Supp.2d 180 (S.D.N.Y. 1998) is misplaced. In *Beharry*, a plaintiff brought an Article 78 proceeding on the basis that his Fourth Amendment rights were violated because a urine drug test he refused to take constituted an unreasonable search and seizure, and his subsequent termination for refusing to take the drug test was rendered in violation of his due process rights under the Fourteenth Amendment. The Article 78 Court dismissed his petition, and the plaintiff then brought a federal case for violations of his rights under the exact same statutes (the Fourth and Fourteenth Amendments) that formed the basis of his prior Article 78 proceeding, for the

same reasons that he had articulated in his Article 78 petition. The district court determined that plaintiff's federal claims were barred by collateral estoppel because the plaintiff had raised the same issues which had already been decided by the Article 78 Court and the plaintiff failed to articulate a reason why he was denied a full and fair opportunity to litigate his claims with the Article 78 Court. *Beharry* is inapposite to the instant matter because, as discussed *supra*, plaintiff's Article 78 Petition and his instant Title VII case involve completely different issues, and nothing related to defendants' discriminatory motivation for terminating plaintiff was decided by the Article 78 Court.

Similarly inapplicable to the instant matter is *Marden*, which involves a district court's determination that a plaintiff's First Amendment retaliation claim was collaterally estopped because it was based on the exact same factual allegations that had already been determined to specifically not constitute retaliation by the Article 78 Court.

## ii. Plaintiff's Article 78 Proceeding Would Have Denied Him a Full and Fair Opportunity to Litigate his Discrimination Claims

Even if plaintiff had raised his discrimination claims in his Amended Article 78 Petition, he did not and could not have had a full and fair opportunity to litigate those claims in his Article 78 summary proceeding. Plaintiff would not have had the opportunity to discovery in order to establish that, despite the existence of a nondiscriminatory basis for plaintiff's termination (the evaluation reports), plaintiff's termination was really motivated by his gender. In Title VII cases, "[i]f the employer articulates a legitimate, nondiscriminatory reason [for the adverse employment action], plaintiff must be given the opportunity either (1) to show directly that a discriminatory reason more likely motivated the employer (i.e., a 'mixed motives' case), or (2) to show indirectly that the employer's proffered explanation is unworthy of credence, and was in fact a pretext for intentional discrimination (i.e. a 'pretext' case)."

Here, plaintiff's theory—which was not and could not have been presented in his Article 78 summary proceeding—is that defendants' proffered reason for plaintiff's termination, the evaluation reports, were created with the motivation to discriminate against plaintiff based on his gender, and although they were filled out in compliance with the Danielson Rubric, these evaluations are not the true basis for plaintiff's termination. In his Article 78 proceeding, plaintiff was simply not afforded the opportunity to rebut the DOE's legitimate, non-discriminatory reason by attempting to establish that it was motivated by his gender and in fact a pretext for intentional discrimination, as he will be in the instant Title VII matter.

As a practical matter, it bears highlighting that neither plaintiff's Amended Article 78 Petition nor the Article 78 Court's final decision contain words or terminology related to plaintiff's discrimination claims, including the words: "discrimination," "retaliation," "pretext," "comparator," "epithet," "adverse action," or "protected activity." It is simply inconceivable to suggest that a plaintiff had a full and fair opportunity to litigate his discrimination claims while not using any of those terms.

### POINT III: PLAINTIFF COMPLIED WITH THE NOTICE OF CLAIM PREREQUISITE FOR HIS STATE AND CITY CLAIMS

Plaintiff filed his EEOC charge on September 24, 2015, while the 90-day deadline to file a notice of claim was on September 29, 2015. It is well-recognized in this Circuit that "receipt of an EEOC charge by a school district may constitute a notice of claim." *Field v. Tonawanda City Sch. Dist.*, 604 F.Supp.2d 544, (W.D.N.Y. 2008)(citing *Donlon v. Bd. of Educ.*, 2007 U.S. Dist. LEXIS 2724, *3 (W.D.N.Y. 2007). See also, *Kushner v. Valenti*, 285 F.Supp.2d 314, 316 (E.D.N.Y. 2003) (same principle). Plaintiff's EEOC charge was filed within 90-days of his termination, so it satisfies the notice requirement of Education Law § 3813.

Defendants' assert that the DOE did not receive plaintiff's charge from the EEOC until November 24, 2015, which was 56 days after the 90-day deadline to file a notice of claim, but that they already had notice of plaintiff's discrimination claims because they were included in his original Article 78 Petition, which was filed November 1, 2015—33 days after the 90-day deadline to file a notice of claim. Therefore, should the Court determine that plaintiff's EEOC charge does not suffice the notice of claim prerequisite of Education Law § 3813, plaintiff requests that the Court grant him an extension to serve defendants with a late notice of claim. It is well settled that courts have broad discretion to extend a plaintiff's time to file a late notice of claim where the defendants had actual notice of the claims within a reasonable period and where the defendants were not prejudiced by the delay. See *Matter of Ramirez v. City of New York*, 2017 N.Y. App. Div. LEXIS 1790, at *2-3 (2nd Dep't, March 15, 2017). Here, the deadline to file a notice of claim was on September 29, 2015, and defendants had actual notice of plaintiff's claims only one month later when plaintiff filed his original Article 78 Petition. Further, the fact that defendants had actual notice of plaintiff's claims within such a short time frame vitiates any contention of prejudice that could be made by defendants. See *Gelish v Dix Hills Water Dist.*, 58 A.D.3d 841, 842, (N.Y. 2009) (actual notice of claims within one month after the ninety day notice of claim deadline was considered a reasonable and minimal delay that did not cause substantial prejudice).

In the event that the Court does not recognize plaintiff's EEOC charge as sufficient notice for the purpose of Education Law § 3813's notice requirement, and considering the timing of defendants' actual notice of plaintiff's claims and the absence of any prejudice to defendants, plaintiff respectfully requests that the Court, who has broad discretion to grant these types of extensions, grant plaintiff an extension to serve defendants with a late notice of claim.

## CONCLUSION

For the foregoing reasons, plaintiff respectfully requests that defendants Motion to Dismiss be denied in its entirety. But should the Court determine any of plaintiff's claims to be insufficiently pleaded, plaintiff requests leave to amend his complaint. Furthermore, should the Court determine that plaintiff's EEOC charge does not satisfy the notice requirement of Education Law § 3813, plaintiff respectfully requests an extension to file a late notice of claim in order to preserve his state and city claims.

Dated: New York, New York
      April 27, 2017

Respectfully submitted,

MIRER MAZZOCCHI SCHALET JULIEN &
CHICKEDANTZ, PLLC

_____
By: Maria L. Chickedantz
*Attorneys for Plaintiff*
150 Broadway, 12th floor
New York, NY 10038
(212) 231-2235
maria@mmsjlaw.com