UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------x

LANE MCDONOUGH,

       Plaintiff,

 -v-                                                                                  No. 16-CV-04272-LTS-JLC

THE NEW YORK CITY DEPARTMENT OF
EDUCATION and PAUL DIDIO,

       Defendants.

-------------------------------------------------------x

MEMORANDUM OPINION AND ORDER

       Plaintiff Lane McDonough ("Plaintiff" or "McDonough") brings this employment discrimination action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq. ("Title VII"), the New York State Human Rights Law, New York Executive Law §§ 296 et seq. ("NYSHRL"), and the New York City Human Rights Law, New York City Administrative Code §§ 8-107 et seq. ("NYCHRL"), against Defendants The New York City Department of Education ("DOE") and P.S. 159 Principal Paul DiDio ("DiDio," and collectively, "Defendants"). In a six-count Amended Complaint, Plaintiff, a former probationary DOE teacher, alleges that he suffered unlawful discrimination and retaliation on the basis of his gender. (Docket Entry No. 25.) Defendants now move pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss all of Plaintiff's claims against them. (Docket Entry No. 33.)

       The Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331, 1343, and 1367.

       The Court has considered the parties' submissions carefully and, for the following reasons, grants in part and denies in part Defendants' motion.

Unless otherwise indicated, the following facts are drawn from the Amended Complaint (the "AC"), and are taken as true for the purposes of this motion to dismiss. In May 2012, Plaintiff Lane McDonough started working for the DOE as a substitute teacher. (AC ¶ 10.) Defendant Paul DiDio observed McDonough teach as a substitute "on several occasions," and provided positive feedback. (Id. ¶ 24.) In 2014, DiDio became the Principal of P.S. 159 and hired Plaintiff as a full-time probationary teacher. (Id. ¶¶ 21, 28.) A total of six probationary teachers were hired at P.S. 159 for the 2014 to 2015 school year, and McDonough was the only male. (Id. ¶ 29.) McDonough was one of only two male teachers at P.S. 159, which employed 35 teachers in total. (Id. ¶ 31.)

McDonough alleges that DiDio wanted to hire him because he assumed "plaintiff was homosexual," based on McDonough's "effeminate qualities." (Id. ¶¶ 23, 32.) However, after discovering a flirtatious email exchange between McDonough and a female colleague that was flagged during the pre-hire review process, DiDio "no longer believed that plaintiff was homosexual." (Id. ¶¶ 33-35.)

McDonough alleges that, after DiDio discovered that McDonough was not gay, he "commenced a year-long campaign of harassment against plaintiff based on plaintiff's gender." (Id. ¶ 36.) This campaign included "attempts to humiliate plaintiff on the basis of gender stereotypes," by making comments such as "[g]uess I'm going to have to start a Home Ec. Class for him now," after McDonough brought brownies to a staff potluck, and "[w]hy don't you take it home for your mommy to fix, Lane?" when McDonough attempted to repair one of his students' mobile projects. (Id. ¶¶ 58, 62.) DiDio also made several comments expressing reluctance to hire and retain men. DiDio allegedly told McDonough that he was "hesitant to hire

men because [he] had a bad experience once," and that he "[wanted] to put [McDonough] in the second grade, but [he did not] think men should teach below the second grade." (Id. ¶ 27.) DiDio also allegedly informed Plaintiff that, "[i]f I were a parent and dropped off my pre-k child, and the teacher was a guy, I would feel weird about it . . . that's why I'm not sure where to place you next year[,] Lane." (Id. ¶ 48.) This comment was made in the presence of Assistant Principal Catalano, who reviewed Plaintiff's performance on several occasions. (Id.)

DiDio also waged his "campaign of harassment" in Plaintiff's classroom. In October 2014, DiDio "abruptly transferred plaintiff from teaching fifth grade to second grade" without giving Plaintiff time to prepare a revised curriculum, and after directing other second grade teachers to transfer their "problematic" students into Plaintiff's new class. (Id. ¶¶ 41-42.) DiDio also conducted a series of "negative" performance reviews during the school year, many of which were based on fabricated evidence and considerations deemed impermissible under DOE policy. (Id. ¶¶ 43-45, 47.) DiDio also did not comply with DOE policy in assigning a mentor to Plaintiff. (Id. ¶¶ 53-57.)

DiDio inconsistently applied evaluation policies to Plaintiff, on the one hand, and to Plaintiff's female probationary colleagues, on the other. Plaintiff's female colleagues were permitted to use their "Principal Practice Observation" as their "sixth annual informal observation," while Plaintiff was not. (Id. ¶ 50.) Defendants observed the female probationary teachers during two math sessions, while Plaintiff was only observed during one. (Id. ¶ 52.) Plaintiff received extra classroom monitoring that his female colleagues did not receive. (Id. ¶¶ 56-57.) The female probationary teachers did not receive "pop-in" visits from school administrators, but Plaintiff did. (Id. ¶¶ 73-74.) Lastly, "all five female teachers from plaintiff's

probationary class were reappointed at P.S. 159 for the 2015 to 2016 academic year," but Plaintiff was not. (Id. ¶¶ 69, 88.)

On April 15, 2015, and on a few occasions thereafter, Plaintiff complained to his union representative about "the ongoing discriminatory harassment that he was experiencing at the hands of defendant DiDio." (Id. ¶ 70.) Plaintiff intended that his complaints remain confidential, but his union representative conveyed them to DiDio. (Id.) On May 1, 2015, DiDio asked Plaintiff whether he "believed that defendant DiDio had been treating him unfairly," to which Plaintiff responded: "Yes, you have been picking on me all year." (Id. ¶ 71.)

On June 1, 2015, DiDio informed Plaintiff that Danielle Giunta, the Superintendent of the school district in which P.S. 159 is located ("Superintendent Giunta"), would be considering the discontinuation of Plaintiff's employment. (Id. ¶¶ 22, 78.) In formulating her decision, Superintendent Giunta considered (i) Plaintiff's classroom observation ratings, (ii) a "counseling memo" written following a "pop-in" visit from Assistant Principal Catalano, and (iii) notes from Plaintiff's mentors. (Id. ¶¶ 78-79.) While Superintendent Giunta was considering Plaintiff's discontinuance, Defendant DiDio withheld from Plaintiff a parent letter of recommendation, his annual performance rating, and his students' test scores. (Id. ¶¶ 82, 84, 86-87.) The female teachers had already been given access to their annual performance ratings. (Id. ¶¶ 84-86.) On June 13, 2015, Plaintiff told Superintendent Giunta about the "harassment plaintiff had experienced at the hands of defendant DiDio," and, in response, the Superintendent initiated a complaint against DiDio with the DOE's Office of Equal Opportunity. (Id. ¶ 83.) Nonetheless, on July 1, 2015, Superintendent Giunta terminated McDonough from his teaching position. (Id. ¶ 88.) DiDio had not provided Plaintiff with his annual performance rating until June 22, 2015, just a few days before the Superintendent's decision. (Id. ¶ 87.)

DiDio never provided Plaintiff with his students' test scores.  (Id.)  On September 8, 2015, Plaintiff received his overall performance evaluation, which reflected a score in the highest level of the "Effective" category—"a sign of very proficient pedagogy."  (Id. ¶ 89.)  This overall performance evaluation consisted of Plaintiff's annual performance rating and "a rating for his students' performance ratings," both of which were withheld from Plaintiff during Superintendent Giunta's deliberations.  (Id.)

On September 24, 2015, Plaintiff filed a charge of gender and sexual orientation discrimination with the Equal Employment Opportunity Commission ("EEOC"), and, on March 11, 2016, he received a Notice of Right to Sue.  (Id. ¶ 8.)  Defendants received notice of Plaintiff's EEOC charge on November 24, 2015.  (Memorandum of Law in Opposition of Motion to Dismiss ("Pls. Brief"), Docket Entry No. 38 at 27.)

On November 1, 2015, Plaintiff filed an Article 78 Petition in New York state court, claiming that his termination violated the Education Law and that he had been discriminated against in violation of the Equal Protection Clause of the United States Constitution.  (Piercy Declaration ("Piercy Decl."), Docket Entry No. 35, Ex. C.)  On April 7, 2016, Plaintiff filed an Amended Petition, removing his discrimination claim.  (Piercy Decl., Ex. E.)  On November 14, 2016, the Article 78 court denied Plaintiff's Petition and dismissed the proceeding after finding that Plaintiff had failed to demonstrate that his termination was "arbitrary or capricious, made in bad faith, or in violation of statutory law" because the DOE had followed the "Danielson rubric" in conducting the observations that formed the basis of Plaintiff's termination.  (Piercy Decl., Ex. F.)

DISCUSSION

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A complaint cannot simply recite legal conclusions or bare elements of a cause of action; it must plead factual content that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. However, a court "need not accord legal conclusions, deductions or opinions couched as factual allegations . . . a presumption of truthfulness." In re NYSE Specialists Sec. Litig., 503 F.3d 89, 95 (2d Cir. 2007) (internal quotation marks omitted).

Preclusion Doctrines

Defendants argue that Plaintiff's Article 78 proceeding bars his claims under the doctrines of res judicata and collateral estoppel. Dismissal under Federal Rule of Civil Procedure 12(b)(6) is appropriate where "it is clear from the face of the complaint . . . that the plaintiff's claims are barred as a matter of law." Conopco, Inc. v. Roll Int'l., 231 F.3d 82, 86-87 (2d Cir. 2000). It is "the party asserting preclusion [who] bears the burden of showing with clarity and certainty what was determined by the prior judgment." BBS Norwalk One, Inc. v. Raccolta, Inc., 117 F.3d 674, 677 (2d Cir.1997) (internal quotation marks omitted). For the reasons that follow, the Court concludes that Plaintiff's claims are not precluded by either res judicata or collateral estoppel.

*Res Judicata*

To prevail on a claim of res judicata, Defendants must show that "(1) the previous action involved an adjudication on the merits; (2) the previous action involved the plaintiffs or

those in privity with them; (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action." Monahan v. N.Y.C. Dep't of Corr., 214 F.3d 275, 285 (2d Cir. 2000). "Res judicata does not bar claims in a subsequent lawsuit where, in the first action, the plaintiff was statutorily or jurisdictionally precluded from obtaining complete relief." Sheffield v. Sheriff of Rockland Cty. Sheriff Dep't, 393 F. App'x 808, 811 (2d Cir. 2010) (internal quotation marks omitted). Article 78 permits damages awards only if the damages are incidental to the primary relief sought. Davidson v. Capuano, 792 F.2d 275, 278 (2d Cir. 1986) (citing C.P.L.R. § 7806). "[S]ubstantial New York authority" indicates that damages for civil rights violations are not considered "incidental" to the primary relief sought. See id. (citing cases).

Defendants argue that, "to the extent the Complaint is read to claim violations of the Education Law, those claims are barred by res judicata." (Memorandum of Law in Support of Defendants' Motion to Dismiss the Amended Complaint ("Defs. Brief"), Docket Entry No. 34 at 22.) However, Plaintiff's Amended Complaint advances no Education Law claim; he asserts only that Defendants violated Title VII, the NYSHRL, and the NYCHRL. (AC ¶ 3.) To the extent that Defendants argue that Plaintiff's discrimination claims are barred by res judicata, their argument must be rejected, as Plaintiff was "statutorily or jurisdictionally precluded from obtaining complete relief" for those claims during his Article 78 proceedings. See Davidson, 792 F.2d at 277-79; cf. Sheffield, 393 F. App'x at 811-12 (recognizing that "the damages [plaintiff] sought for [defendants'] alleged violation of Title VII were not incidental to the relief she could have received in a pure Article 78 proceeding"). Thus, Defendants have not demonstrated "with clarity and certainty" that Plaintiff's claims are barred by res judicata.

*Collateral Estoppel*

Defendants argue that Plaintiff's discrimination claims are barred by collateral estoppel because "Plaintiff asserted nearly identical allegations of discrimination in both the Article 78 Petition and this Amended Complaint." (Defs. Brief at 22-25.) Collateral estoppel precludes a party from raising an issue in a subsequent proceeding if "(1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits." Interoceanica Corp. v. Sound Pilots, Inc., 107 F.3d 86, 91 (2d Cir. 1997) (internal quotation marks omitted).

Defendants have not sustained their burden of "showing with clarity and certainty" that Plaintiff's discrimination claims, and the allegations pertaining thereto, were "determined by the prior judgment." BBS Norwalk One, Inc., 117 F.3d at 677. In fact, the evidence Defendants provide shows the opposite: that no issue pertaining to Plaintiff's discrimination claims was "actually litigated and decided" in the Article 78 proceeding because Plaintiff removed his discrimination claim from his Petition.[1] (See Piercy Decl., Ex. E.) The record shows that the Article 78 court's decision was limited to a determination that Plaintiff's termination was not "arbitrary or capricious, made in bad faith, or in violation of statutory law" because Defendants followed the Danielson rubric in conducting their evaluations. (Piercy

---

[1] The Court may consider the Article 78 filings and decisions submitted with the parties' motion papers because they are "matters of public record" upon which the Court may rely in deciding a motion to dismiss. Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67, 75 (2d Cir. 1998).

Decl., Ex. F.)  Because the Article 78 court did not "actually decide" any issue pertaining to Plaintiff's discrimination claims, these claims are not barred by collateral estoppel.

Title VII Claims Against Paul DiDio

Plaintiff's Title VII claims against Paul DiDio must be dismissed with prejudice because individuals cannot be held liable under Title VII.  See Spiegel v. Schulmann, 604 F.3d 72, 79 (2d Cir. 2010); Wrighten v. Glowski, 232 F.3d 119, 120 (2d Cir. 2000).  As Plaintiff fails to state a federal claim against DiDio, the Court declines to exercise supplemental jurisdiction of the state law claims asserted against him in the Second, Third, Fifth, and Sixth Claims for Relief.

Title VII Discrimination Claim Against the DOE

Title VII prohibits an employer from discriminating against an individual with respect to his "compensation, terms, conditions, or privileges of employment" because of his gender.  42 U.S.C.S. § 2000e-2(a)(1) (LexisNexis 2012).  To state a claim for gender discrimination, a plaintiff must allege that (i) he is a member of a protected class, (ii) he was qualified for the position he held, (iii) he suffered an adverse employment action, and (iv) he has some minimal evidence suggesting an inference that the employer acted with discriminatory motivation.  Littlejohn v. N.Y.C., 795 F.3d 297, 307 (2d Cir. 2015).  "[A]n employment discrimination plaintiff need not plead a prima facie case of discrimination" to survive a motion to dismiss pursuant to 12(b)(6).  Swierkiewicz v. Sorema N. A., 534 U.S. 506, 515 (2002).

Plaintiff is a member of a protected class based on his gender.[2] Defendants do not dispute that Plaintiff was qualified for his teaching position, nor do they dispute that Plaintiff suffered an adverse employment action.[3] Rather, Defendants' challenge rests on Plaintiff's failure to plead facts from which the Court could plausibly infer that his termination was motivated by discriminatory animus. (See Defs. Brief at 12-18.)

"An inference of discrimination can arise from circumstances including, but not limited to, the employer's criticism of the plaintiff's performance in [terms that degrade plaintiff's gender]; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's discharge." Littlejohn, 795 F.3d at 312 (internal quotation marks omitted). At the pleading stage, "the evidence necessary to satisfy the initial burden of establishing that an adverse employment action occurred under circumstances giving rise to an inference of discrimination is minimal." Id. at 313.

---

[2] While Plaintiff principally advances a theory of discrimination based on gender-stereotyping, he provides only ambiguous factual allegations to support this theory. Plaintiff also pleads a conceptually clearer and more straightforward discrimination claim—one that accords with the pleading standards set forth in Swierkiewicz and Littlejohn—based on his male gender.

[3] In addition to Plaintiff's termination, other employment actions alleged in the Amended Complaint—such as his abrupt transfer from fifth grade to second grade, the fact that DiDio assigned him to teach a class full of behaviorally "problematic" students, or his negative performance evaluations—may constitute "adverse employment actions" for purposes of establishing Title VII liability. See Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 88 (2d Cir. 2015) (finding that plaintiff plausibly alleged that assignment to teach classes with increased number of Spanish-speaking students was an "adverse employment action" because the assignment resulted in an "excessive workload" as a result of discriminatory intent based on plaintiff's race); see also Lawrence v. Mehlman, 389 F. App'x 54, 56 (2d Cir. 2010) (stating that "reprimands or negative evaluation letters may, in some circumstances, constitute adverse employment action" for purposes of establishing a discrimination claim under Title VII).

Plaintiff has plausibly alleged that he suffered an adverse employment action motivated by gender discrimination. He supports this claim with evidence demonstrating Defendants' anti-male bias. For example, Plaintiff alleges that Defendant DiDio made several "invidious comments" about his gender: DiDio allegedly told him that he was "hesitant to hire men because [he] had a bad experience once," and that he "[wanted] to put [McDonough] in the second grade, but [he did not] think men should teach below the second grade." (AC ¶ 27.) DiDio also allegedly remarked on Plaintiff's teaching placement in gender-degrading terms, stating, "[i]f I were a parent and dropped off my pre-k child, and the teacher was a guy, I would feel weird about it . . . that's why I'm not sure where to place you next year[,] Lane." (Id. ¶ 48.)

Defendants argue that "Plaintiff fails to provide any nexus between [DiDio's] alleged comments and his eventual termination." (Defs. Brief at 16.) However, because Plaintiff alleges that DiDio's reviews comprised a significant portion of the materials that Superintendent Giunta considered in formulating her termination decision, Plaintiff's allegations are sufficient to meet his minimal burden to plausibly plead that DiDio's discriminatory intent was a motivating factor contributing to his adverse employment action. See Vasquez v. Empress Ambulance Serv., Inc., 835 F.3d 267, 271-73 (2d Cir. 2016) (applying "cat's paw" theory of liability to conclude that discriminatory intent could be imputed to employer where adverse employment action was taken by a supervisor "who himself has no discriminatory motive, but who has been manipulated by a subordinate who does have such motive and intended to bring about the adverse employment action").

The demographics of P.S. 159's teaching staff also provide evidence of Defendants' anti-male bias. Plaintiff alleges that, "[d]uring the 2014-2015 school year, only two (2) of P.S. 159's thirty-five (35) teachers were male," and only one of those male teachers was

tenured. (Id. ¶ 31.) Of the six probationary teachers who were hired to teach during the 2014 to 2015 academic year, Plaintiff was the only male. (Id. ¶ 29.) Only the female probationary teachers were retained to teach during the following academic year. (Id. ¶ 69.) This empirical evidence shows a severe underrepresentation of male teachers at P.S. 159, and supports an inference that Defendants were not inclined to hire and retain men to teach there.

Plaintiff also supports an inference of gender discrimination through comparator evidence demonstrating that Defendants treated him less favorably than "similarly situated" female employees. "A plaintiff may support an inference of [gender] discrimination by demonstrating that similarly situated employees of a different [gender] were treated more favorably." Norville v. Staten Island Univ. Hosp., 196 F.3d 89, 95 (2d Cir. 1999) "To establish an inference of discrimination, a plaintiff must allege that she was similarly situated in all material respects to the individuals with whom she seeks to compare herself." Brown v. Daikin Am. Inc., 756 F.3d 219, 230 (2d Cir. 2014) (internal quotation marks omitted). A plaintiff and his comparators "need not be identical," but they must bear a "reasonably close resemblance." Id. The question of whether two employees are "similarly situated" is ordinarily a question of fact, "rather than a legal question to be resolved on a motion to dismiss." Id.

Plaintiff, who was a probationary teacher, asserts that he was treated less favorably than female probationary teachers at P.S. 159. These teachers (i) were hired at same time as Plaintiff, (ii) taught at the same school as Plaintiff, and (iii) were in probationary status during the 2014 to 2015 school year, and, thus, were ostensibly subject to the same performance evaluation and disciplinary standards. These similarities are sufficiently material and bear a reasonably close resemblance to Plaintiff's employment circumstances, such that the female probationary teachers serve as adequate comparators at the pleading stage.

Plaintiff alleges several ways in which he was treated less favorably than his "similarly situated" female colleagues: (i) they were permitted to contribute positive, "Principal Practice Observation" reviews towards their final evaluation, while he was not; (ii) they were reviewed on more diverse and less challenging subject matter, such as math, while more of his reviews were based on more challenging subjects, such as writing; (iii) Defendants monitored Plaintiff's performance more closely than they did his female colleagues' performance; (iv) Plaintiff was subjected to persistent ridicule by DiDio, while his female colleagues were not; (v) Plaintiff was disciplined for conduct that went undisciplined when committed by his female colleagues; and (vi) all female probationary teachers were rehired for the following school year, while Plaintiff was not. (Pls. Brief at 5.)

The Court concludes that Plaintiff's factual allegations are more than sufficient to make plausible his claim that his termination, negative reviews, and adverse changes to his conditions of employment occurred under circumstances giving rise to an inference of discrimination. Littlejohn, 795 F.3d at 313. Therefore, Defendants' motion to dismiss Plaintiff's First Claim for Relief is denied.

Title VII Retaliation Claim Against the DOE

Plaintiff states a plausible claim of discriminatory retaliation. "Title VII provides that '[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by [Title VII].'" Vega, 801 F.3d at 89-90 (quoting 42 U.S.C. § 2000e–3(a)). To prevail under a theory of retaliation, a plaintiff must show that (i) plaintiff was engaged in a protected activity; (ii) the employer knew of the activity; (iii) the employee suffered an adverse employment action; and (iv) there was a causal connection between the protected activity and the

adverse employment action.  Cortes v. N.Y.C., 700 F. Supp. 2d 474, 482 (S.D.N.Y. 2010) (citing Sista v. CDC Ixis North America, Inc., 445 F.3d 161, 177 (2d Cir. 2006)).

First, Plaintiff alleges plausibly that he engaged in protected activity.  "Protected activity" refers to "action taken to protest or oppose statutorily prohibited discrimination."  Cruz v. Coach Stores, Inc., 202 F.3d 560, 566 (2d Cir. 2000).  Plaintiff engaged in protected activity when he "complained to . . . his union representative [] of the ongoing discriminatory harassment that he was experiencing at the hands of defendant DiDio."  (AC ¶ 70.)  Plaintiff also engaged in protected activity when he informed Superintendent Giunta that DiDio had harassed him throughout the school year.  (Id. ¶ 83.)

Second, Plaintiff alleges plausibly that Defendants knew that Plaintiff had engaged in protected activity.  Plaintiff alleges that his union representative informed DiDio of Plaintiff's complaints.  (Id. ¶ 70.)  Indeed, DiDio confronted Plaintiff regarding the subject of his alleged complaint just a few days after Plaintiff met with his union representative.  (Id. ¶ 71.)  Furthermore, after Plaintiff lodged a complaint with Superintendent Giunta, the Superintendent initiated a complaint directly with the DOE, providing the Defendant with notice of Plaintiff's protected activity.  (Id. ¶ 83.)  From these facts, the Court can reasonably infer that Defendants knew about Plaintiff's protected activity.

Third, Plaintiff alleges plausibly that he suffered adverse employment actions after he engaged in protected activity.  In the retaliation context, "an adverse employment action is any action that 'could well dissuade a reasonable worker from making or supporting a charge of discrimination.'"  Vega, 801 F.3d at 90 (quoting Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 57 (2006)).  Adverse employment actions are not limited to discriminatory actions that affect the "terms and conditions of employment."  Id.  Plaintiff alleges sufficiently that he

suffered adverse employment actions when (i) Defendant DiDio withheld positive reviews that could have materially affected the Superintendent's termination decision, and (ii) Plaintiff was terminated from his employment with the DOE.  These actions, particularly the loss of employment, would "dissuade a reasonable worker from making or supporting a charge of discrimination."  Id.

Finally, Plaintiff alleges sufficiently a causal connection between his protected activity and the adverse employment action taken against him.  This causal connection can be inferred based on the temporal proximity of the two events.  (See Pls. Brief at 19); see also Vega, 801 F.3d at 90 ("A retaliatory purpose can be shown indirectly by timing: protected activity followed closely in time by adverse employment action").  Here, DiDio began withholding Plaintiff's positive reviews approximately one month after DiDio confronted Plaintiff regarding his complaint to the union representative and just three days after DiDio informed Plaintiff that Superintendent Giunta was considering his discontinuance.  (AC ¶¶ 71, 78, 81.)  Moreover, just two weeks passed between Plaintiff's harassment complaint to Superintendent Giunta and her decision to terminate his employment.  (Id. ¶¶ 83, 88.)

Plaintiff adequately pleads a claim of retaliation for protected conduct and, thus, his allegations are sufficient to withstand Defendant DOE's motion to dismiss his Fourth Claim for Relief.

Notice of Claim Requirement

Defendants argue that Plaintiff's state and city law claims should be dismissed "because Plaintiff failed to serve a timely a notice of claim."  (Defs. Brief at 26.)  Claims against the DOE, as a school district in the State of New York, are governed by New York Education Law Section 3813(1), which provides, in relevant part, that no claim involving the rights or

interests of any district may be brought "unless it shall appear by and as an allegation in the complaint or necessary moving papers that a written verified claim upon which such action or special proceeding is founded was presented to the governing body of said district or school within three months after the accrual of such claim."  In brief, the statute requires that a person seeking to make a claim against the DOE must make a written verified claim to the DOE, within three months after the claim accrued, prior to filing a complaint in court.  See Parochial Bus Sys., Inc. v. Board of Educ., 60 N.Y.2d 539, 548-49 (1983).

There is no indication in Plaintiff's pleadings or his opposition papers that Plaintiff filed such a notice of claim.  To the contrary, Plaintiff concedes in his opposition brief that Defendants did not receive any notice of his claims until well after the statutory deadline had passed.  Plaintiff asserts that he "filed his EEOC charge on September 24, 2015," but he does not dispute that "the DOE did not receive plaintiff's charge from the EEOC until November 24, 2015," nearly five months after Plaintiff's claim began to accrue.  (Pls. Brief at 26-27.)  Plaintiff also argues that Defendants received notice of his discrimination claims "because they were included in his original Article 78 Petition, which was filed November 1, 2015—33 days after the 90-day deadline to file a notice of claim."  (Id. at 27.)  By Plaintiff's own account, he failed to timely serve Defendant DOE with a notice of claim.

Plaintiff also requests leave to file a late notice of claim, but this request is foreclosed by the plain language of New York Education Law Section 3813(2-a) and by decisions of the New York Court of Appeals.  Section 3813(2-a) of the New York Education Law precludes courts from granting an extension to serve a notice of claim that "exceed[s] the time limited for the commencement of an action by the claimant against any district."  That time limit is one year.  N.Y. Educ. L. § 3813(2-b).  The Court of Appeals held in Cohen v. Pearl River

Union Free School District, 51 N.Y.2d 256 (1980), that "when an act such as service of notice of claim must be performed within a specific time as a means of complying with a statutory condition precedent, the time period in question operates as a limitation upon the right to recover rather than as a limitation only upon the remedy, and the tolls and extensions delineated in the CPLR generally may not be invoked to alter the statutorily designated deadline for the performance of the act." Id. at 264.

The Court may not permit Plaintiff to file a late notice of claim in this case because the notice is a required condition of his claim that cannot be extended beyond the one-year limitations period set forth in the statute. See Salahuddin v. N.Y.C. Dep't of Educ., No. 15-CV-6712-LTS-DCF, 2016 WL 5477739, at *3 (S.D.N.Y. Sept. 29, 2016). Plaintiff's one-year limit expired on July 1, 2016. Accordingly, Plaintiff's Second, Third, Fifth, and Sixth Claims for Relief against the DOE are dismissed for failure to comply with the notice of claim requirements of the New York Education Law.[4]

CONCLUSION

Defendants' motion to dismiss Plaintiff's Amended Complaint is granted in part and denied in part. As to Defendant DOE, the Court denies the motion to dismiss Plaintiff's First and Fourth Claims for Relief, but grants the motion to dismiss Plaintiff's Second, Third,

---

[4]  Defendant DiDio does not fall within the explicit purview of Section 3813 of the New York Education Law. Persuasive authority from this Circuit suggests that principals are not, in fact, considered "officers" upon whom a notice of claim must be served. Richards v. Calvet, No. 99-CV-12172-RJH-MHD, 2005 WL 743251, at *12-13 (S.D.N.Y. Mar. 31, 2005); see also Carlson v. Geneva City School Dist., 679 F. Supp. 2d 355, 365-67 (W.D.N.Y. 2010) (concluding that school principal was not an "officer" within the meaning of Section 3813(1) of the New York Education Law). Therefore, the Court does not address the question of whether the notice of claim requirement applies to DiDio and declines to exercise supplemental jurisdiction of Plaintiff's state and local law claims against DiDio. See 28 U.S.C.S. § 1367(c) (LexisNexis 2012).

Fifth, and Sixth Claims for Relief. As to Defendant DiDio, the Court grants the motion to dismiss Plaintiff's First and Fourth Claims for Relief, and declines to exercise supplemental jurisdiction of Plaintiff's Second, Third, Fifth, and Sixth Claims for Relief.

This case is referred to Magistrate Judge Cott for general pre-trial management. The parties are directed to contact Judge Cott's chambers to make arrangements for an initial pre-trial conference.

This Memorandum Opinion and Order resolves Docket Entry No. 33.

SO ORDERED.

Dated: New York, New York
September 27, 2018

    /s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
United States District Judge